OZAIAS PAQUIN, Respondent, v. ST. LOUIS & SUBUR-
BAN RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, October 21, 1901.

1. **Damages: LOSS OF EARNINGS: PLEADING: PERSONAL IN-
JURY.** Loss of earnings or of business is a kind of injury which is
not regarded as a necessary consequent of a personal injury and
must therefore be pleaded to entitled the plaintiff to give evidence
of such loss.

2. ———: ———: ———. When the injury occasions loss of time or
of business, the value of the plaintiff's service alone fix the amount
he should recover for loss of time or business.

3. ———: ———: ———: PROFITS IN BUSINESS. Profits in bus-
iness that are too uncertain and depend on contingencies that can

Paquin v. St. L. & Sub. Ry. Co.

not be foreseen or provided against, are not admitted as elements of damages in personal injury cases.

4. ———: ———: ———: EVIDENCE. And it is not competent for plaintiff to introduce evidence of what he had paid others to perform the same services in carrying on his business, that he would have performed but for the injury.

5. ———: ———: RULES OF DEFENDANT COMPANY WHEN IN FORCE. When a rule necessary to the safe and orderly operation of street railway cars has once been shown to be in force, the presumption is, in the absence of countervailing evidence, that it was in force at the time of the accident.

6. Risks of Plaintiff: CONTRIBUTORY NEGLIGENCE. In the case at bar, the risk the plaintiff assumed by taking a position on the bumper of a street car was that of being thrown off it, not that he would be struck by a car coming up from the rear or be compelled to jump off to avoid collision.

Appeal from St. Louis City Circuit Court.—*Hon. John A. Talty*, Judge.

AFFIRMED (*conditionally*).

### STATEMENT OF THE CASE.

The petition, aside from formal allegations, avers, in substance, that on the twentieth day of October, 1899, plaintiff boarded a car of defendant at Wash street and Jefferson avenue, in the city of St. Louis; that he continued to ride on said car as far as Pendleton avenue; that when said car reached Pendleton avenue it stopped, and that while it was standing at said place another car of defendant approached from the rear and ran into said car; that plaintiff's attention was directed to said approaching car, and that he had reasonable cause to apprehend a collision; that he believed the danger imminent and impending and therefore jumped from the place where he had been

standing; that before he reached a point of safety he was struck by the approaching car and sustained divers injuries; that said injuries were due to the fact that defendant carelessly and negligently managed, controlled and operated said cars.

Defendant's answer set up that whatever injuries were sustained by plaintiff were due to his own negligence in that plaintiff, at the time of said injuries, was negligently riding on the sill which projected a few inches beyond the platform of defendant's car, outside of the dashboard of the rear platform, which said sill was not intended for the use of passengers.

The reply was in the nature of a general denial.

For plaintiff, the evidence tended to show that on October 20, 1899, he boarded a street car of defendant at Jefferson avenue and Wash street, and that on account of the crowded condition of the car and its rear platform, he took a standing position on the bumper outside the fender of the rear platform; that the conductor of the car saw his position, made no objection to his riding where he was, and collected of him the usual fare, and that it was and had been for years the custom of defendant's car conductors, when the cars were overcrowded to permit persons to ride on the bumpers and to collect the regular fares from them; that plaintiff rode in this position until the car reached Pendleton avenue, where the car stopped to let off some of the passengers; that while the car was standing, another car of defendant, traveling in the same direction and on the same track, ran into and collided with the car plaintiff was on; that plaintiff saw the approaching car at a distance of about fifty feet and saw the motorman turning or working at something, but the car came right on and that when he saw that it would crash into the car he was on, to avoid being crushed he attempted to jump out of the way, and that as he jumped and was in the air he was struck in the back by the moving car and thrown into the street. He was picked up and

taken care of, and was treated by physicians until about the first of the following May; that from the blow the right kidney was permanently dislocated and the tube leading from it to the bladder bent down and that this kidney can not perform its functions and the injury to it is permanent; that plaintiff also had a rib broken by the accident; that plaintiff is a regular registered physician and at the time of the injury made a specialty of treating nervous diseases, alcoholism and morphine, and that during his confinement from the injury for twenty-seven days he paid two physicians ten dollars per day, or two hundred and seventy dollars, to carry on his professional business, and that this charge was reasonable; that in 1896 defendant had in force the following rule:

"In case of blockades, do not run nearer than two hundred feet of car ahead; and when going uphill, when cars are loaded, keep at least three hundred feet from car ahead."

Defendant's evidence showed that from the time plaintiff got on the car until he reached Jefferson avenue, a distance of seventeen blocks, plaintiff noticed the other car following the one he was on and that the rear car, on several occasions, approached very close to the car on which he was riding, and on one occasion approached so near that plaintiff could almost touch it with his hand, and its evidence tended to show that, "when plaintiff got upon said sill in the rear of said car the danger of riding in said position was obvious to plaintiff, and also tended to show that the collision of the cars at Pendleton avenue was not due to any negligence on the part of the motorman in charge of said car, but was due to the fact that the controller of said rear car suddenly and unexpectedly got out of order." In rebuttal plaintiff offered evidence that it was known to the motorman in charge of the rear car that the controller was out of order sometime before the collision; that the car could have been stopped by using the overhead switch;

that the car was going uphill at the time of the collision and that the front car was about two hundred and fifty feet ahead of the rear car when it stopped, and that in that distance going uphill, the car could have been stopped by the use of the brakes without turning off the power.

At the conclusion of plaintiff's evidence, and again at the close of all the evidence, defendant offered an instruction directing the jury to find for defendant, which was refused, and the court gave the following instructions for plaintiff:

"No. 1. If the jury finds from the evidence in this case that the defendant was operating the railway and cars mentioned in the evidence on the twentieth day of October, 1899, for the purpose of carrying passengers for hire; and if the jury find from the evidence that the defendant's servants in charge of its west-bound car number 172 received the plaintiff as a passenger upon said car upon a projection of said car in the rear of and outside the dashboard of said car; and if the jury find from the evidence that the defendant carried the plaintiff as a passenger upon said projection westward on the way to his destination as far as the west crossing of Pendleton avenue and there stopped; and if the jury find from the evidence that defendant's conductor, in charge of said car, collected plaintiff's fare as such passenger whilst riding as such upon said projection, and that defendant customarily carried passengers upon said projection; and if the jury further find from the evidence that whilst said car was so stopped at said crossing another of defendant's cars going west upon its track behind said car on which the plaintiff was such passenger approached said car and threatened to collide with said car and injure the plaintiff; and if the jury find from the evidence that the danger of said collision and injury to the plaintiff therefrom was apparent and imminent, and such as a reasonably prudent man would have deemed imminent under like circumstances, and that plaintiff

believed that it was imminent and impending; and if the jury find from the evidence that the plaintiff, to escape said apparent and imminent danger, jumped from said car on which he was a passenger, and that he used ordinary care in so jumping; and if the jury find from the evidence that whilst the plaintiff was reaching a place of safety after jumping from said car or whilst jumping from said car he was struck by said car of defendant following the car on which he was such passenger and injured; and if the jury find from the evidence that said car so following the car on which the plaintiff was such passenger actually collided with said car; and if the jury further find from the evidence that defendant, by its agents and servants in charge of said car that so collided with the car on which the plaintiff was such passenger, could, by the exercise of the highest degree of care, such as would be exercised by practical and skillful railroad employees under like circumstances, have averted said collision, and neglected to do so; and if the jury find from the evidence that the plaintiff was exercising ordinary care at the time of said collision and injury, then the plaintiff is entitled to recover, and the verdict must be for the plaintiff.

"No. 2. If the jury find for the plaintiff they should assess his damages at such a sum as they may believe from the evidence will be a fair compensation to him:

"*First*. For any pain of body or mind which the plaintiff has sustained, or will hereafter sustain, by reason of said injuries and directly caused thereby.

"*Second*. For any physical disability or impairment of health which he has sustained, or will hereafter sustain, by reason of said injuries and directly caused by said injuries.

"*Third*. For any expenses necessarily incurred for medical attention directly caused by said injuries.

"*Fourth*. For any expenses necessarily expended for employing aid in carrying on his business caused directly by his injuries."

And gave the following for defendant:

"No. 3.   The court instructs the jury that if they believe from the evidence that on the occasion in question, the place on defendant's car which plaintiff took was, under all the surrounding circumstances and movements of defendant's cars, obviously attended with more than ordinary risk from cars approaching from behind, then it was the duty of plaintiff to exercise ordinary care in watching for the approach of such cars, and if necessary to avoid such danger, in the exercise of ordinary care to get off the car he was on and place himself out of danger; and therefore, the jury are instructed that if they believe from the evidence that the plaintiff failed to exercise such ordinary care, or that he negligently and carelessly got off, and by such failure and negligence he contributed directly to the injuries he sustained, then the verdict of the jury should be for the defendant.

"No. 4.   The court instructs the jury that if you believe from the evidence that the collision in question was due solely to the fact that the controller machinery on the rear car was in such condition that the motorman could not throw off the power; and that such condition arose suddenly and was not known to the defendant or its agents previous to said time, and could not have been discovered by them by the exercise of such care as is described in these instructions as owing by the defendant to the plaintiff, then and in that case your verdict must be for the defendant.

"No. 5.   The court instructs the jury that 'ordinary care,' as mentioned in these instructions, depends upon the facts and circumstances in each particular case.   It is such care as a person of ordinary prudence and caution would exercise in the same situation and circumstances as those of the person with reference to whom the term 'ordinary care' is used in these instructions.   The omission to use or exercise such care is

'negligence,' within the meaning of that term as used in these instructions."

And refused the following asked for by defendant:

"No. C. The court instructs the jury that the mere fact that defendant's conductor collected the fare from plaintiff while he was standing on the ledge or projection of the rear platform did not absolve plaintiff from the duty of using ordinary care to protect himself from danger; and if, after plaintiff's fare had been collected, the plaintiff became aware, or, by the exercise of ordinary care, might have become aware of the danger of riding in such position, then in that case he was guilty of negligence in remaining in said position, and your verdict should be for the defendant.

"No. D. The court instructs the jury that if you believe from the evidence that it was dangerous for the plaintiff to ride on the bumper or ledge of the rear platform of the car where plaintiff was riding, and that the danger of riding on said ledge or projection was known to plaintiff, or, by the exercise of ordinary care, might have been known to him, then the plaintiff was guilty of negligence in riding upon said ledge or projection, and can not recover in this suit.

"No. E. The court instructs the jury that if they believe from the evidence that the plaintiff, on the occasion in question, saw that there would be a collision, and in getting off of the car to avoid the car approaching from behind, he was guilty of negligence and carelessness contributing to his injuries, then the jury should find a verdict for the defendant."

There was a verdict for plaintiff for seventeen hundred and fifty dollars. After an unavailing motion for new trial defendant appealed.

*McKeighan & Watts* and *Robert A. Holland, Jr.,* for appellant.

(1)    The court erred in allowing plaintiff to testify as to what was the reasonable value of the services of certain doctors whom he employed to take his place in his office, to attend to his business; and that he paid said doctors ten dollars per day for twenty-seven days.    It was error for the court to allow said evidence to be introduced, because the plaintiff in a suit of this kind is not entitled to recover the profits of his business, as they are merely speculative.    And to allow him to place another man in his office, and recover for the amount he pays said person, is simply an indirect way of allowing him to recover the profits of his business.    There was no guarantee whatever that if he had been in his office he would have had any profits himself, hence it is improper to allow him to recover ten dollars per day for the cost of a substitute.    Marks v. Railroad, 14 Daly 61; Wade v. Leroy, 61 U. S. 34; The Schooner Lively, 1 Gall. 315; The Amiable Nancy, 3 Wheat. 546; La Armstad de Ruer, 5 Wheat. 385; Boyd v. Brown, 17 Pick. 453.
(2)    The court erred in refusing to give the instruction in the nature of demurrer to the evidence offered by defendant at the close of plaintiff's case, and again at the close of all the evidence. Said instruction reads as follows:    "The court instructs the jury that under the pleadings and evidence in this case the plaintiff is not entitled to recover, and you will find your verdict for defendant."    The evidence clearly showed that plaintiff was guilty of contributory negligence.    Davies v. Railroad, 59 S. W. 982; Schmitt v. Railroad, 60 S. W. 1047; Tanner v. Railroad, 61 S. W. 826; Sharp v. Railroad, 61 S. W. 829.

*Wm. R. Gentry* for respondent.

(1)    Unless plaintiff was guilty of contributory negligence, as a matter of law on his own admissions, the case should have gone to the jury.    Riding in such a position with the

knowledge and consent of the company, after the conductor had accepted his fare while in that position, and when the defendant was in the habit of allowing passengers to ride there, was not negligence per se, but was a question of fact for the jury, where the moving cause of the accident and injury to plaintiff was not the natural motion of the car, but an act of negligence on the part of the defendant. Seymour v. Railroad, 114 Mo. 266; Wilmott v. Railroad, 106 Mo. 535; Sweeny v. Railroad, 150 Mo. 385. (2) The demurrer was properly overruled. The record shows that the demurrer was not offered at the close of plaintiff's testimony, but was offered at the close of all the evidence for the first time. Therefore, all the testimony must be reviewed in considering the demurrer, and the plaintiff must be given the advantage of every favorable presumption that can reasonably be indulged in his favor. Baird v. Railroad, 146 Mo. 265. (3) In the case of Marks v. Railroad (decided fifteen years ago), a case where a manufacturer had been injured and brought suit, the court uses the following language: "It was for the loss of profits this plaintiff recovered, although his counsel calls it earnings. If this plaintiff had the right to recover his loss in his business, Masterson had surely the right; but the court, in respect of his claim, say: 'These profits depend upon too many contingencies, and are altogether too uncertain to furnish any safe guide in fixing the amount of damages. The plaintiff had the right to prove the business in which he was engaged, its extent, and the particular part transacted by him, and, if he could, the compensation usually paid to persons doing such business for others. These are circumstances the jury have a right to consider in fixing the value of his time. But they ought not to be permitted to speculate as to the uncertain profits of commercial ventures in which the plaintiff, if uninjured, would have been engaged.' "

BLAND, P. J.—On the trial defendant objected to evidence of the amount plaintiff had paid out to others to attend to his business on the following grounds:

"We object to that question as incompetent, irrelevant and immaterial, because the petition is a general claim for damages without any separation as to amounts that may or may not have been paid out for the employing of doctors to take his place."

The objection was overruled and an exception saved. The allegations of damages found in the petition are as follows: "That by reason of the injuries received, as above set forth, and the results which followed therefrom, all of which resulted from the negligence of defendant, as above set forth, plaintiff has suffered and will suffer very severe pain of body and mind and mental anguish, has lost and will lose much time from his usual occupation, has been unable a great deal of the time to do any thing whatever, has been confined to his bed a part of the time, has incurred and will have to incur much expense for medicines and nursing and medical attention, has been obliged to pay out large sums of money to others to carry on his business, his whole nervous system has been permanently shocked and injured, he has been permanently injured and weakened, and he has lost and will lose the earnings of his work and labor and the profits of his business."

It is no where alleged in the petition that plaintiff was a physician or that he was engaged in professional business. His occupation is not stated, nor is it alleged that he suffered pecuniary damages on account of loss of time or earnings. Loss of earnings or of business is a kind of injury which is not regarded as a necessary consequence of a personal injury and must therefore be pleaded to entitle the plaintiff to give evidence of such loss. Mellor v. The Mo. Pac. Ry. Co., 105 Mo. l. c. 464; Gerdes v. Iron and Foundry Co., 124 Mo. l. c. 360; Mason v. St. L., I. M. & S. R'y Co., 75 Mo. App. l. c. 9. When

Paquin v. St. L. & Sub. Ry. Co.

the injury occasions loss of time or of business, the value of the plaintiff's personal services alone fix the amount he should recover for loss of time or of business.    Mastison v. Mt. Vernon, 58 N. Y. 391; Sedgwick on Damages, sec. 181.    Profits in business that are too uncertain and depend on contingencies, that can not be foreseen or provided against are not admitted as elements of damages in personal injury cases, and it was not competent for plaintiff to introduce evidence of what he had paid others to perform the same services in carrying on his business that he would have performed but for the injury. The objection to this character of evidence should have been sustained.

II.    The admission of defendant's rule in respect to the distance to be observed by a car running behind another was objected to on the ground that the rule was not shown to be in force at the time of the accident.    The objection was overruled and an exception saved.    The rule was shown to be in force in 1896.    It is a rule necessary to the safe and orderly operation of defendant's cars, and the presumption is, in the absence of countervailing evidence, that it was in force at the time of the accident.    Pope v. The Kansas City Cable Ry. Co., 99 Mo. 400; Cargile et al. v. Wood et al., 63 Mo. 501; Jennings v. Sparkman, 48 Mo. App. 246.    If the rule had been abrogated or annulled, the knowledge of this fact was peculiarly in the defendant, and if it did not want to be bound by the rule it should have shown that it was not in force.

III.    We do not think the court erred in refusing to take the case from the jury, on the ground that the evidence clearly showed that plaintiff was guilty of such contributory negligence as to preclude him from recovering.    The fact that persons were permitted by the defendant's conductors to ride on the bumper when the cars were crowded and were recognized and

Vol 90 app—9

treated as passengers, was an invitation to the public to take that position on their cars when no other was available. Under the facts in the case plaintiff was a passenger on defendant's car, invited to take a somewhat perilous position, and took upon himself such risk only as was reasonably apparent. The contention that, after the rear car had run so close to him that he could have almost touched it with his hand, the danger of a collision was so apparent and imminent that to longer continue in his position was such negligence as to preclude a recovery, is not tenable. There is nothing in the evidence to show that the plaintiff knew or could infer that the controller of the rear car was out of order or that the motorman did not have perfect control of the car; nothing to indicate that the near approach of the car was not from the voluntary act of the motorman, so that, there was, in fact, no warning given to the plaintiff that there was danger of a collision and he had nothing on which to predicate a rational belief that the car and its machinery were not in perfect order, and he had a right to believe the motorman would use a high degree of care in operating the car and that he could and would prevent a collision. Sweeney v. K. C. Cable Ry. Co., 150 Mo. 385. The risk that plaintiff assumed by taking a position on the bumper was that of being thrown off it, not that he would be struck by a car coming up from the rear or be compelled to jump off to avoid such collision.

The instructions submitted to the jury the issue of contributory negligence (of which there was but slight evidence), which issue was found for plaintiff. They submitted, also, the issue of the failure of the defendant to exercise due care, which was also found for the plaintiff, and, taken as a whole, covered the whole case and are absolutely fair to the defendant and announce the law correctly, except as to the question of damages.

Refused instructions "C" and "E" are covered by those

given. Refused instruction "D" directed the jury to find for defendant if they found riding on the bumper was dangerous, and was known to plaintiff to be so, or if he might, by the exercise of ordinary care, have known it. The plaintiff was not injured on account of the fact that he was on the bumper, but on account of the fact that he was compelled to jump from the bumper to avoid a collision. The obvious risk in riding on the bumper was not that the car would be run into by another car, and the instruction was properly refused.

For error in permitting a recovery for the amount plaintiff paid to other physicians to attend to his business during his confinement, the judgment will be reversed and cause remanded, unless plaintiff within ten days remit two hundred and seventy dollars of his judgment. If the remittitur be entered in this court, within ten days the judgment will be affirmed. *Goode, J.,* concurs; *Barclay, J.,* not sitting, having been of counsel in the circuit court.