# WELLMEYER v. ST. LOUIS TRANSIT COMPANY, Appellant.

### Division Two, July 3, 1906.

1. **NEGLIGENCE: Contributory: Riding on Platform: Question for Jury.** Riding upon a street car as a passenger by standing on the platform when there is room for such passenger to be seated, and when no special reason exists for his taking such position, is not as a matter of law contributory negligence, but whether or not it be is a question to be passed upon by the jury under the facts and circumstances detailed in evidence.

2. ——— :———: ———: ———: **Circumstances: Riding on Front Platform: Defective Track.** It was customary for passengers to leave the platform at the place of the accident by way of the front platform, and plaintiff, when the car was about 300 feet from the place where he wished to get off, arose from his seat and went to the front platform for the purpose of getting off there, and when the car was 200 feet from the place, it made a violent lurch and threw him off or he fell off. *Held,*

Wellmeyer v. St. Louis Transit Co.

that he was not, in taking his position on the platform and remaining there for so short a time as was required for the car to reach the place where he intended to leave it, guilty of negligence *per se*, even though there were unoccupied seats in the car. *Held*, also, that if the fall and injury were the direct and proximate result of the negligence of the defendant company in maintaining its track in a defective condition, he was entitled to recover, unless he was guilty of negligence contributing to his injury.

3. ———: **Damages: Loss of Earnings: Evidence.** It may be inferred that plaintiff's loss of earnings was at least equal to what he had to pay to another to take his place in his store and perform the work he was engaged in at the time of the injury, and proof of such payment is evidence of his loss of earnings.

4. ———: **Instructions: No Evidence.** Where there is no evidence upon which to predicate an instruction, to-wit, that if plaintiff voluntarily extended his head or other portion of his body outside and beyond the side of the car while riding on the front platform, and while in that position his head or the exposed part of his body came in contact with the near-by trolley pole, etc., the instruction should not be given.

5. ———: **Known Danger: Voluntarily Assumed: Verdict Contrary to Instruction: Duty to Passenger: Knowledge of Defective Track.** The fact that the passenger may have known the defective condition of the track at the time he took a position on the front platform while the car was still in motion, does not bar a recovery for his injuries by being thrown from the platform when the car, owing to the defective track, made a violent lurch; for the defendant company's implied contract with him as a passenger was to carry him safely, and he had the right to rely upon that contract. So that where the evidence shows that the passenger had on prior occasions felt the jerking motion of the car, but also shows that the shock or jerk which caused his injury was more violent than any he had ever felt before on that or any other line, it cannot be said that a verdict for him was against the instruction of the court which told the jury that if plaintiff voluntarily took a known dangerous position on the car, when there was no necessity therefor, he could not recover.

Appeal from St. Louis City Circuit Court—*Hon. Walter B. Douglas*, Judge.

AFFIRMED.

*Boyle & Priest, J. W. Jamison* and *John T. Gose* for appellant.

(1) One who testifies as a witness in his own behalf is conclusively bound by his deliberate admissions from the witness stand. Cogan v. Railroad, 73 S. W. 738; Shirts v. Overjohn, 60 Mo. 305. Where the facts showing the contributory negligence are testified to or admitted by plaintiff himself, the question is not one for the jury. Davis v. Railroad, 159 Mo. 1. It is contributory negligence, as a matter of law, to ride standing on the platform of a street car when there is room for one to be seated, and where no special reason exists requiring one to ride upon the platform. Thayne v. Traction Co., 191 Pa. St. 249; Andrews v. Railroad, 2 Mackey 137; Mann v. Traction Co., 34 Atl. 572; Cassidy v. Railroad, 29 N. Y. Supp. 918; Watson v. Railroad, 93 Maine 584; Burr v. Railroad, 64 N. J. L. 30. Where one voluntarily, and with any necessity therefor, takes a position of danger upon the front platform of a street car, when there is ample room for him to sit in the car, he is guilty of such contributory negligence as will bar a recovery. Ashbrook v. Railroad, 18 Mo. App. 290; Bradley v. Railroad, 90 Hun 419; Beal v. Lowell, 157 Mass. 444; Francisco v. Railroad, 60 N. Y. 797; Mann v. Traction Co., supra; Cassidy v. Railroad, supra; Clark v. Railroad, 36 N. Y. 137. Where one might by the exercise of ordinary care have avoided the injury there cannot be any recovery. Cooley on Torts (2 Ed.), 812; Nellis on Street Railways, pp. 383, 384; 7 Am. and Eng. Ency. Law (2 Ed.), 385, 386; Ashbrook v. Railroad, 18 Mo. App. 290; Smith v. Railroad, 61 Mo. 588; Tanner v. Railroad, 161 Mo. 497; Moore v. Railroad, 176 Mo. 528; Murphy v. Railroad, 153 Mo. 261. (2) Loss of earnings is a special damage which must be proven. Vongter v. Mercantile Co., 86 S. W. 486;

Slaughter v. Railroad, 116 Mo. 274; Mellor v. Railroad, 105 Mo. 462; O'Brien v. Loomis, 43 Mo. App. 29; Mauerman v. Railroad, 41 Mo. App. 348. Where there is no evidence as to the earnings lost, it is error to give an instruction authorizing a recovery therefor. Mammerberg v. Railroad, 62 Mo. App. 563; O'Brien v. Loomis, supra; Mauerman v. Railroad, supra; Center Creek v. Frankstein, 78 S. W. 781; Kimball v. Railroad, 82 S. W. 1099; Brayhill v. Northern, 74 S. W. 1024; Culberson v. Railroad, 5 Mo. App. 556; Stephen v. Metzger, 95 Mo. App. 610. Where an injury occasions loss of time or business, the value of the plaintiff's personal services alone fixes the amount he should recover for loss of time or business. Paquin v. Railroad, 90 Mo. App. 129; Masterson v. Mt. Vernon, 58 N. Y. 391; Sedgwick on Damages, sec. 181. That plaintiff hired an additional clerk is no evidence of plaintiff's loss of earnings. Paquin v. Railroad, 90 Mo. App. 129. (3) Where there is evidence to justify an inference, there is evidence to support an instruction. Flournoy v. Anderson, 1 Mo. 513; Bradford v. Pearson, 12 Mo. 71; Dowling v. Allen, 102 Mo. 213; Tyler v. Hall, 106 Mo. 513; Seligman v. Rogers, 113 Mo. 642; Bergeman v. Railroad, 104 Mo. 77; Chouteau v. Iron Works, 94 Mo. 388. It is not necessary that the evidence should establish conclusively the hypothesis stated in an instruction; if there be any evidence conducing to establish the assumption, it is sufficient to authorize the giving of the instruction. (4) Where the verdict is so opposed to the evidence as to lead to the conclusion that it was the result of passion or prejudice, or that the instructions of the court were disregarded, it is the duty of the appellate court to interfere. Spohn v. Railroad, 87 Mo. 74; Garrick v. Greenwall, 92 Mo. 120; Lane v. Railroad, 132 Mo. 27; Price v. Evans, 49 Mo. 396; Whitsett v. Ransom, 79 Mo. 258; Reed v. Ins. Co., 58 Mo. 429.

*E. W. Banister* and *A. R. Taylor* for respondent.

(1) There is no just reason for the contention of appellant that the trial court should have sustained a demurrer to the evidence. There was overwhelming evidence of negligence of the carrier. Counsel contends that it was contributory negligence, as a matter of law, for respondent to go to the front platform before the car reached its destination. There is where he had to go in order to alight from the car, according to the usual conduct of appellant's business. It is just what is usually and habitually done by street car passengers, and negligence can not be predicated upon such acts. Certainly, not negligence as a matter of law. Seymour v. Railroad, 114 Mo. 271; Burns v. Railroad, 50 Mo. 140; Railroad v. Walling, 97 Pa. St. 55. In this case respondent was injured directly and proximately by the negligence of defendant in maintaining a track in such defective condition as to endanger passengers. The evidence shows that passengers habitually left the car by the front platform, and it was necessary to go on the front platform to get off, and the riding thereon the short space from the time respondent got on the platform to the stopping place could not be declared negligence as a matter of law, without condemning the usual habit of passengers—and there was no objection from the servant in charge of said car to such acts. Sweeney v. Railroad, 150 Mo. 398; Parks v. Railroad, 178 Mo. 114. (2) If a man is disabled from labor and occupation, and is thereby conmpelled to hire a man to do the work which he would have done but for his injury, there is no reason in law or elsewhere why he should not be entitled to recover for this expense. (3) There was no evidence from any source that the respondent put his head voluntarily beyond the body of the car. Chubbeck v. Railroad, 77 Mo. 596. (4) Respondent could not have expected such a shock as he had never experienced before unless he possessed that mys-

tical lore by which "Coming events cast their shadows before."

BURGESS, P. J.—This is an action by plaintiff against the defendant to recover twenty-five thousand dollars damages for personal injuries alleged to have been sustained by him while a passenger for hire upon one of defendant's cars, by reason of being thrown from said car against a post, owing to the rocking of the car caused by the defective condition of defendant's track.

The trial by the court and jury resulted in a verdict and judgment in favor of plaintiff for the sum of five thousand dollars. Within four days after verdict defendant filed motion for a new trial which was overruled. From the verdict and judgment defendant appeals.

At the time of the injury plaintiff was a passenger on defendant's car, enroute to Easton avenue, and as the car approached said avenue he went to the front platform to be ready to step off of the car when it stopped. Plaintiff had a transfer on defendant's line west on Easton avenue. After taking his position on the platform he stood, with his back to the body of the car, holding with his right hand to the hand rail, and about eighteen inches from the step of the car. While he was in the position indicated, according to plaintiff's evidence, the car gave a violent lurch by which he was thrown forward and sidewise, so that his head and shoulders were thrown beyond the body of the car and brought in violent contact with a post standing within a foot or eighteen inches of the track, causing a fracture of the skull, injury to and impairment of the sight of his right eye, a fracture of the shoulder blade and of two of his ribs.

The petition, after alleging that the defendant was a corporation engaged in the business of carrying passengers for hire, avers that "plaintiff was received as a

passenger at Marcus avenue and Natural Bridge Road, on said car, on May 7, 1902, and that defendant, for valuable consideration paid by plaintiff to defendant, undertook and agreed with plaintiff to carry him safely as such passenger on said car to his destination on defendant's line, to-wit, Marcus and Easton avenues. That in violation of its undertaking and of its duty in the premises, defendant did, by its servants in charge of said car, so negligently run, control and manage said car, to-wit, about 200 feet north of Easton evenue, plaintiff's destination, and before said car reached plaintiff's destination, and while he was such passenger on said car, and did run said car at a high and negligent speed over defendant's track, which was rough and uneven and the joints were not broken, so that the passage of said car sustained whilst running upon said track violent shocks directly tending to throw passengers from said car as to cause the plaintiff to be thrown from said car and to be greatly and permanently injured.

"And plaintiff avers that whilst such passenger on said car he was moving to the front platform of said car for the purpose of leaving said car at his destination, which was one mode of egress from said car, provided by defendant for passengers, and whilst he was on said front platform of said car for said purpose, owing to the negligent management of said car by the defendant's servants, and owing to the negligent running of said car along and over said defective track at a high and negligent speed, and owing to said negligent and defective condition of said track and the rails and joints thereof, the plaintiff was caused to be thrown from said car and sustained permanent injuries upon his body, head, arms and shoulders, his skull was fractured, his eyes and the nerves thereof were injured, his sight impaired, his eyes disordered and crossed, his shoulder-blade was broken, his ribs were broken on the left side, his lungs were injured, the artery of his head

was broken and his heart was injured, and plaintiff sustained other injuries upon his body and internal injuries.

"That by his injuries so sustained the plaintiff has suffered and will suffer great pain of body and mind. Has been permanently disabled from his labor and his avocation as merchant and druggist, and has lost and will lose the earnings of his labor and business. Has incurred and will incur large expenses for medicines, medical and surgical attention and nursing, and his health and strength has been impaired and he is maimed and disfigured for life, to his damage in the sum of twenty-five thousand dollars, for which sum he prays judgment."

The defenses were a general denial and a plea of contributory negligence. The answer further avers, "that plaintiff's alleged injuries were caused by the negligence of plaintiff in riding upon the front platform of the car, when he might have taken a safe and secure position inside the car, and at the time of the taking of such position upon the platform of the car he had full knowledge of the condition of the car track, trolley pole and car, and their relative positions to each other."

The evidence on the part of the plaintiff tended to show that at the place of the accident the ties were worn out and rotten to such an extent that the car would frequently jump the track. That the joints of the rails were not in line, and at places the one rail was higher than the other, so that the car in running over the track would sustain violent shocks and jerks and would lurch sidewise, and that this condition existed at the time of the injury.

Henry N. Barkess, a witness who saw the accident, testified that at the time of the accident the car seemed to leap or surge several feet towards the east, and the next instant he saw plaintiff lying motionless on the ground; that he walked to the place where the accident

occured, and saw that, at a point about six feet north of the post against which plaintiff struck, the south rail was about half an inch higher than the end of the north rail on the west side of the track.

Monte H. Beenken, who had formerly been a conductor in the employ of the defendant, and who passed over the track frequently, testified that the track was in a very bad condition; that the rails and ties were old, and the foundation of the track bad; that sometimes a rail would spring in two, and that at places the cars had to be run slow to keep from jumping the track.

The evidence showed that plaintiff became a passenger on the car at Marcus avenue and Natural Bridge Road, paying his fare and taking a seat on the left side of the car. That when within about 300 feet of his destination he went to the front platform to be ready to step off promptly, and that the usual way of getting off the car at this point was by way of the front platform. That, when within about 200 feet of Easton avenue, and while he was standing on said platform, holding to the hand rail, the car gave a violent lurch forward and sidewise which threw his head beyond the side of the car, his head striking against a post close to the track; that his skull was fractured, his eyes injured, his shoulder-blade fractured, and two ribs on his left side broken; that he was unconscious for a time, and suffered severely for months. That he was in business for himself as a druggist, and that because of his injuries and inability to work he had to hire a man at $50 a month to do the work he had been doing before his injury, and take his place while incapacitated—about six and a half months.

On the part of the defendant, Mrs. I. M. Smith, a passenger on the car, testified as follows:

"Q. How many other passengers were on the car besides yourself and children? A. I just saw one other passenger; he sat across the aisle. I was in the sec-

ond seat from the back, and the other passenger that I saw was across the aisle.

"Q. Did you notice a police officer? A. I did not notice him.

"Q. The other passenger you speak of was the plaintiff? A. I think he was the plaintiff; I am sure he was the plaintiff.

"Q. What became of the plaintiff—where did he go? A. He sat there, and presently I saw him start for the front end of the car and the next thing I knew the car had stopped, and I glanced out the window and saw the motorman going to the back of the car, and I started to get off myself with my children, and the conductor had left the car, he was just ready to step down, and I saw on the other side of the track, the east side of the track where the man had fallen off the car, and I stepped down with my two children there. I remember I was going down to the corner of Grand and Laclede avenues that day to see a show, Ringling Brothers' show; I remember thinking to myself how slow this car was going, and that I will never get to the show.

"Q. You saw the plaintiff go out of the door of the car? A. I did.

"Q. How long after he went out the door was it before the car stopped? A. Well, it was a very short time; I cannot state in minutes and seconds; I cannot possibly.

"Q. State whether or not the car was going fast or slow at that time? A. Well, to the best of my recollection, the car was going slow; I wanted to get down there to get into the show, and I did not think I could make it, because I knew at Easton and Grand avenues the cars would be crowded, and I remember thinking how slow the car was going. I swear that car was going slow; I must swear to that.

"Q. State whether or not the movement of the car was smooth or rough? A. It was not very rough that I noticed. I had my little boy on the side beside me

and had my baby on my lap, and when the car stopped it did not move the boy, even the sudden stopping of the car.

"Q. State whether or not at any time from the time you got on until the car stopped you observed any swinging, violent swinging motion of the car at all? A. I did not.

"Q. You had your baby in your lap all of the time? A. Yes, I did.

"Q. And the little boy by you? A. The little boy by me."

Patrick McKenna, the other passenger on the car, said:

"Q. State whether or not you saw him go out to the front platform? A. I saw him get out of the seat very near Leduc street and walk out on the front platform.

"Q. I will get you to state whether or not the car ran fast or slow at that time? A. Slow.

"Q. About what rate of speed? A. Not over four or five miles an hour.

"Q. I will get you to state whether or not that car was rocking violently or running smoothly? A. Well, it was running smoothly.

"Q. I will get you to state whether or not at any time from the time you saw the plaintiff first on the car to the time the car stopped, you noticed any unusual or violent motion or jerking of the car at all? A. No, sir; there was not."

Burd Ivey, the motorman, did not see Mr. Wellmeyer on the platform of the car and did not know what position he assumed. He did not notice anything wrong until he heard the noise of the fall and stopped his car. As to the movement of the car and the rate of speed, he said:

"Q. State to the jury at what rate of speed that car was running at the time, whether fast or slow? A.

The car was running slow; I would not judge it was running over four or five miles an hour.

"Q. How far was it from the end of the line? A. Well, something about two or three hundred feet; it was not very far, and we were slowing up when getting near the end of the line.

"Q. I will get you to state whether the car was moving smoothly or roughly? A. The car was running along smoothly.

"Q. State whether or not you observed any unusual swaying or lurching of the car at the time the plaintiff fell? A. No, sir; I did not.

"Q. Or at any time before? A. No, sir; nothing unusual."

The conductor, James Ingram, testfied that he was on the back platform and knew nothing of the man having fallen until the car was stopped. His testimony in regard to the motion and speed of the car, was as follows:

"Q. I will get you to state, while you were standing out there on the rear platform, whether you observed any unusual or violent swinging or lurching of the car? A. I did not.

"Q. I will get you to state how fast that car was running? A. Well, I would say about four miles an hour, not over five."

At the close of all the evidence the court refused defendant's peremptory instruction. To which action of the court defendant then and there at the time duly excepted.

Over the objection and exceptions of defendant the court at the instance of plaintiff instructed the jury as follows:

"1. If the jury find from the evidence in this case that on the 7th day of May, 1902, the defendant was operating the railway and street car mentioned in the evidence for the purpose of carrying passengers for hire:

"And if the jury find from the evidence in this case that on said day the defendant by its servants in charge of its south-bound car on Marcus avenue, received the plaintiff as a passenger thereon to be carried as such passenger to his destination on said car at Easton and Marcus avenues;

"And if the jury find from the evidence that as said car approached said destination the plaintiff walked to the front platform of said car for the purpose of alighting from said car when it reached said destination;

"And if the jury find from the evidence that whilst the plaintiff was on said front platform and before said car reached said destination said car sustained a violent and unusual shock by reason of the defendant's servants negligently running said car at a high and negligent rate of speed on a track which was defective as hereinafter stated, whereby the plaintiff's head was caused to be brought in contact with a pole near said track and that thereby the plaintiff was injured and fell from said car;

"And if the jury find from the evidence that defendant's track at said place was rough and uneven and that the joints of the rails were worn and not broken or made even and that thereby said car was caused to sustain said violent and unusual shock and plaintiff to so come in contact with said post and sustain such injury;

"And if the jury find from the evidence that the defendant failed to exercise a very high degree of care in running its said car over said track in said condition, and if the plaintiff was exercising ordinary care at the time of his injury, then he is entitled to recover.

"2. By the term 'ordinary care' as used in the instructions as applied to the plaintiff, is meant such care as an ordinarily prudent man would use under the same or similar circumstances.

"3.  If the jury find for the plaintiff they should assess his damages at such a sum as they may believe from the evidence will be a fair compensation to him.

"1st.  For any pain of body or mind which the jury may believe from the evidence the plaintiff has suffered or will suffer by reason of his injuries and directly caused thereby.

"2nd.  For any loss of the earnings of his labor which the jury may believe from the evidence the plaintiff has sustained by reason of his injuries and directly caused thereby.

"3rd.  For any expenses necessarily incurred for medical or surgical attention or nursing which the jury may believe from the evidence the plaintiff has incurred by reason of his injuries and directly caused thereby."

- At the request of defendant the court gave the jury the instructions in words and figures as follows:

"1.  If plaintiff's sister or any other person rendered services to plaintiff without intending at the time to charge for such services, and he afterward voluntarily paid for said services, such payment was a purely gratuitous act on his part, and he had no right to include it among the necessary expenses of his illness.

"2.  The petition in this case alleges that plaintiff was thrown from the car and injured by reason of alleged imperfections in the track and by reason of an alleged high and negligent rate of speed at which the car was running at the time.  If plaintiff recovers, it must be on these grounds and no other, and unless he has established these alleged facts by the evidence, your verdict must be for defendant.

"3.  If at the time of plaintiff's injury the car was running at slow speed and smoothly, then he cannot recover in this action, no matter how dangerous or defective the track may have been, and no matter how or by what means he was injured.

"4. Notwithstanding you may believe that defendant did not use that degree of care which the law required of said defendant as set forth in other instructions, still the court declares to you that such lack of care on defendant's part could not and did not relieve plaintiff of the duty to use ordinary care for his own safety, and if he failed to do so, and such failure on his part directly contributed to his injury, he cannot recover, no mater how negligent defendant may have been.

"5. An adult passenger, possessed of ordinary mental capacity and intelligence, who knowingly and voluntarily takes an unsafe or dangerous position on a moving car, without any present necessity for so doing, and when by remaining elsewhere on or within the car until it stops he would be safe, does so at his own peril; and if by so doing he receives injury he alone is responsible therefor.

"If, therefore, you believe and find from the evidence that by reason of the condition of the track or rails it was dangerous or hazardous for a passenger to be upon the front platform of the car in question while the same was in motion, and that plaintiff was then and there acquainted with the condition of said track, and knew of the danger or risk of riding upon said platform, and so knowing, voluntarily went there while the car was in motion, and by reason of his so placing himself upon said front platform he was hurt as shown by the evidence, when by waiting elsewhere on or within the car until the same had come to a stop he would not have been hurt, then the court declares to you as a matter of law that plaintiff cannot recover, and your verdict must be for the defendant; no matter whether plaintiff was injured by a lurch of the car, or not.

"6. If from the evidence you believe that plaintiff and defendant were both negligent, and that the negligence of each concurred with the negligence of the other in causing plaintiff's injury, and that the injury

would not have occurred from the negligence of either without such concurring negligence of the other, then your verdict must be for defendant.''

The court refused the instructions asked by defendant as follows:

''7. Even though you may find and believe that passengers usually left the car by way of the front platform, still the court instructs you that the evidence fails to disclose any necessity for plaintiff to go out on said platform before the car came to a stop.

''8. If plaintiff voluntarily extended his head or other portion of his body out side and beyond the side of the car while riding on the front platform, and while in that position his head or exposed part of his body came in contact with a trolley pole, whereby he was injured; he cannot recover in this action and your verdict must be for defendant.''

Defendant insists that the case should not, under the evidence, have been submitted to the jury, because, as contended, the evidence shows that plaintiff was guilty of contributory negligence in voluntarily, and without any present necessity for so doing, riding upon the front platform of the car under circumstances which he knew, or ought to have known, exposed him to danger.

While it is held in other jurisdictions that a passenger who rides standing upon the platform of a street car, when there is room for such passenger to be seated, and when no special reason exists for his taking such position, is guilty of contributory negligence as a matter of law, it is well settled in this State that it is not negligence as a matter of law, but a question to be passed upon by the jury under the facts and circumstances detailed in evidence. [Burns v. Railroad, 50 Mo. 139.]

In Seymour v. Railroad, 114 Mo. 266, it is said: ''The law is now well settled that it is not negligence *per se* on the part of a passenger on a horse car to ride

on the platform, and this is true whether there is or is not room in the car. The passenger being on the platform when injured by the negligence of the driver or other servant of the defendant, the question of contributory negligence is one for the jury, and not for the court.''

While the plaintiff testified that the car swayed and jolted at or near the place of the accident, he also said that he had never felt such a lurch or shock as the one which caused him to fall from the car; and if the fall and injury were the direct and proximate result of the negligence of the defendant in maintaining its track in a defective condition, the plaintiff is entitled to recover, unless he was guilty of negligence contributing to his injury. It sems that it was the custom for passengers to leave the car at this place by way of the front platform, and as it appears from the evidence that plaintiff had only taken his position on said platform for the purpose of getting off the car at Easton avenue, he was not, in so doing and in remaining there for so short a time as was required for the car to reach the place where he intended to leave the car, guilty of negligence *per se,* even though there were unoccupied seats in the car. [Sweeney v. Railroad, 150 Mo. 385.] Nor is it negligence, as a matter of law, for a passenger on a street car to ride on the front step of the platform while cars pass by on the other track. [Parks v. Railroad, 178 Mo. 108.]

The court did not err in overruling the demurrer to the evidence.

Another contention is that loss of earnings is a special damage, and must be pleaded and proven in order to justify an instruction for a recovery. It is asserted that there was not a word of evidence as to what plaintiff's earnings were while in the drug business or as to what his time was worth in that business. The case of Paquin v. Railroad, 90 Mo. App. 118, is chiefly relied upon as sustaining defendant's contention. It

is true that it is said in that case: "It is nowhere alleged in the petition that plaintiff was a physician, or that he was engaged in professional business. His occupation is not stated, nor is it alleged that he suffered pecuniary damages on account of loss of time or earnings. Loss of earnings or of business is a kind of injury which is not regarded as a necessary consequence of personal injury, and must therefore be pleaded to entitle the plaintiff to give evidence of such loss." But while there was an entire absence from the petition in that case of any allegation with respect to loss of earnings, the petition in the case at bar alleged, "That by his injuries so sustained the plaintiff has suffered and will suffer great pain of body and mind; has been permanently disabled from his labor and his avocation as merchant and druggist, and has lost and will lose the earnings of his labor and business."

While plaintiff did not testify directly as to the value of his earnings, the loss of which was directly caused by his injury, his testimony showed that he was necessarily compelled to employ a man to perform the work he was engaged in at the time of the injury, and he stated, without objection, that the value of the services of the person so hired by him did not exceed fifty dollars per month; from which it may reasonably be inferred that the loss of plaintiff's earnings, during the time he was incapacitated for work by reason of his injuries, was at least equal to the amount he paid another to fill his place in the drug store during said time.

Another insistence is that the court committed error in refusing instruction numbered eight, asked by defendant. There was no evidence upon which to predicate this instruction. Besides, instruction number 1 given for the plaintiff, and instruction number 4 given for the defendant, declared that it was plaintiff's duty to use ordinary care for his own safety, and if he failed to do so, and such failure contributed to his injury, he

could not recover. These instructions fully and properly declared the law upon that question.

A final contention is that the verdict is against the instructions of the court, and especially instruction number 5, given at the request of the defendant. In support of this contention it is claimed that plaintiff testfied to the existence of facts which showed that he knowingly and voluntarily exposed himself to danger and contributed to the injury. On this question plaintiff testified as follows:

"Q. Had you experienced lurches during the time you had ridden on that car before? A. I felt the movement of the car — slight jerking. Q. Now, with reference to the shocks you formerly felt, how was this shocking or lurch? A. This was more severe at that time. Q. *Had you ever experienced such a lurch as that before on that line? A. No, sir. Q. Or any other line? A. No, sir.*"

While this evidence shows that plaintiff had felt the jerking motion of the car when riding on it on former occasions, it also shows that the shock or lurch of the car on the occasion of the accident was more severe than he had ever felt before upon that or any other line; and the fact that he may have known the condition of the road at the time of the accident was no obtacle to his recovery, under the circumstances, for defendant's implied contract with him as a passenger was to carry him safely, and he had the right to rely upon its doing so.

The case seems to have been fairly tried and the verdict fully justified by the evidence. The judgment should, therefore, be affirmed. It is so ordered.

All concur.