ELIZABETH M. ELY, Respondent, v, SOUTHWEST MISSOURI RAILROAD COMPANY, Appellant.

Springfield Court of Appeals, February 7, 1910.

1. STREET RAILWAYS: Duty to Passengers: Alighting at Point Other Than Destination. Deceased was riding on the back platform of the street car. At the time of the accident he was two blocks from his destination. The conductor gave the signal to stop for another passenger to alight, but discovered that he was mistaken as to the street, and before the car stopped gave the go ahead signal. At the time the car started, the deceased, while attempting to alight, fell or was jerked from the car and was killed. *Held*, that the true test of liability of the defendant in this cause is to be determined by the degree of care required of the company to passengers at a point other than that of their destination; and that it was necessary to plead and prove not only a sudden and unusual jerk of the car, but that the conductor knew, or failed to exercise proper care to know, that the deceased was attempting to leave the car at the time of the accident.

2. ———: ———: ———. Even though a street car passenger is not at his destination, yet if he passes from the platform of a car down to the step, with the knowledge of the motorman

or conductor, then it was their duty to exercise a high degree of care in the management of the car so that he would not be thrown therefrom by any extraordinary movement of the car.

3. ———: ———: ———. It is well settled that the mere starting of a car with a sudden jerk at a time when those in charge of a car did not know, or had no reason to know, that a passenger was about to alight, is not sufficient to make a case.

4. ———: ———: ———: **Duty of Motorman.** The degree of care of the motorman in the starting and management of his car at a point where passengers are bound to get on or off is different from and greater than the care required when he is operating his car at a place where it is not expected that a passenger will attempt to leave the car.

5. ———: ———: **Alighting at Destination.** If a passenger is about to reach his destination, and as the car is stopping he leaves his place and proceeds to the platform or steps for the purpose of alighting when the car has stopped, then if those in charge of the car start the same with an unusual and sudden jerk, and thereby the passenger sustains injuries, the company is liable.

6. ———: ———: **Custom in Alighting.** It is a well known fact of which a street car company must take knowledge, and cannot plead ignorance, that passengers do not wait for a car to be brought to a standstill before leaving their seats and going to the platform for the purpose of alighting.

7. ———: ———: **Question for Jury.** Where there is a conflict in the testimony as to whether a car is started with a sudden or unusual jerk, the question is one for the jury and the trial court.

Appeal from Jasper Circuit Court.—*Hon. H. L. Bright,* Judge.

REVERSED AND REMANDED.

*McReynolds & Halliburton* for appellants.

(1) Plaintiff was not entitled to recover under the pleading and evidence in this case. The petition alleges one state of facts and the proof shows an entirely different state of facts. Behen v. Transit Co., 186 Mo. 439; Murphy v. Transit Co., 125 Mo. App. 274; Nellis,

Street Surface Railroads, 484; Jacobson v. Transit Co., 106 Mo. App. 347; Yarnell v. Railroad, 113 Mo. 578. (2) Where a party attempts to get off a car that is not stopped to let passengers off (even though slowed up), without knowledge of conductor or motorman, company not liable for starting car, even with a jerk. Jackson v. Railroad, 118 Mo. 199; Cramer v. Traction Co., 112 Mo. App. 361; Peck v. Traction Co., 131 Mo. App. 140; Carroll v. Transit Co., 107 Mo. 653; Weber v. Cable Co., 100 Mo. 201; Harlan v. Railroad, 65 Mo. 22; Strauss v. Railroad, 75 Mo. 191; McCarthy v. Railroad, 105 Mo. App. 601; Jackson v. Railroad, 118 Mo. 190; Prior v. Street Railway, 85 Mo. App. 367; Allen v. Transit Co., 183 Mo. 411. (3) "There must be an absence of care and foresight in order to make the carrier liable for an injury to a passenger." Krone v. Railroad, 97 Mo. App. 612; Sawyer v. Railroad, 37 Mo. 240; Elliott on Railroads, sec. 1639; Bartley v. Street Railway, 148 Mo. 124. (4) Plaintiff's instruction No. 1 was erroneously given, in that it enlarged the issues as presented by the pleadings and it is a universal rule that instructions should not enlarge the issues made by the pleadings and must be within the pleadings. Hamilton v. Street Railway, 114 Mo. App. 573; Maggioli v. Transit Co., 108 Mo. App. 416; Corum v. Railroad, 113 Mo. App. 631; Stewart v. Andees, 110 Mo. App. 247; Hufft v. Railroad, 121 S. W. 121; Bank v. Murdock, 62 Mo. 73; Mansur v. Botts, 80 Mo. 658; Newlin v. Railroad, 121 S. W. 130; Price v. Railroad, 72 Mo. 416.

*Elton T. Harris, John B. Cole, A. C. Burnett* and *Fred L. Williams* for respondent.

(1) Plaintiff's instruction No. 1 was properly given, and defendant's instruction "A" properly refused. Wellmeyer v. Transit Co., 198 Mo. 527; Newcomb v. Railroad, 169 Mo. 409; Daugherty v. Railroad, 81 Mo. 325; Moorman v. Railroad, 105 Mo. App. 711; Daugherty v. Railroad, 9 Mo. App. 478; Allen v. Tran-

sit Co., 183 Mo. 411; Schultze v. Railroad, 32 Mo. App. 438; Hurley v. Street Railway, 120 Mo. App. 262; Cobb v. Railroad, 149 Mo. 135; Grace v. Railroad, 156 Mo. 295; Miller v. Street Railway, 125 Mo. App. 414. (2) The question as to whether the Rev. Simpson Ely was guilty of contributory negligence was a question of fact for the jury to determine and was properly submitted to the jury. Parks v. Railroad, 178 Mo. 108; Hansberger v. Ry. L. & P. Co., 82 Mo. App. 566; Sweeney v. Railroad, 150 Mo. 385; Shareman v. Transit Co., 103 Mo. App. 515; Vessels v. Railroad, 129 Mo. App. 708; Saare v. Railroad, 20 Mo. App. 211; Baskett v. Railroad, 123 Mo. App. 725; Richmond v. Railroad, 49 Mo. App. 104; Kreimelmann v. Jourdan, 107 Mo. App. 64; Seymour v. Railroad, 114 Mo. 266; Gerstle v. Railroad, 23 Mo. App. 361. (3) "It is not negligence *per se* to rise from a seat and step to the side of a slowly moving open car which is coming to a stop, for the purpose of getting on the runboard to alight when the car does stop." Davis v. Railroad, 63 Atl. 843; Railroad v. Ferguson (Kan.), 80 Pac. 471; Forbes v. Railroad (Iowa), 113 N. W. 477; McKee v. Transit Co., 108 Mo. App. 470.

GRAY, J.—This action was instituted by respondent in the circuit court of Jasper county, on the 12th day of September, 1908, to recover from appellant the sum of $10,000, on account of the death of respondent's husband, the Reverend Simpson Ely, caused, as the plaintiff claims and alleges, by the negligence of appellant.

The petition alleges that the defendant was at the times mentioned therein, a corporation existing by virtue of the laws of this State, and as such, was operating a street or electric railroad in the city of Joplin, as a common carrier of passengers; that on the 5th day of July, 1908, the said Simpson Ely entered one of defendant's cars and became a passenger thereon, to be

carried to Fifteenth street in said city; that the said
Simpson Ely on nearing said Fifteenth street, passed
out to the back platform of said car, for the purpose
of getting off at his said destination, and that defend-
ant's servants in charge of said car, so negligently con-
trolled said car that said Simpson Ely was thrown from
the said platform of said car to the street, and received
injuries from which he died; that the death of the de-
ceased was caused by the negligence of the servants of
defendant running said car, and consisted in bringing
said car to a standstill, or almost to a standstill, and
then by certain application of the power, starting said
car forward in a violent, sudden and unexpected lurch
and jerk, thereby causing said Simpson Ely to lose
his hold and balance on said car, and to be thrown from
said car to the street.

The answer admitted that the defendant was a cor-
poration at the time mentioned in the petition, and that
as such, it was at said time, operating a street railroad
in Joplin as a common carrier of passengers, and that
on July 5, 1908, the deceased was a passenger on one
of defendant's cars, and denied all the other allegations
of the petition. The answer further alleged that the
injury was caused solely by the negligence of the deceas-
ed in riding on the platform of the car when there was,
at the time, plenty room in the car, and that the de-
ceased either attempted to get off the car when the
same was running, and without the knowledge of de-
fendant's servants, or that through inadvertence or diz-
ziness, he fell from the platform of the car.

The trial was before a jury, on January 15, 1909,
resulting in a verdict in favor of the plaintiff for the
sum of $2000, and a judgment was rendered thereon,
from which the defendant appealed to this court.

Main street in Joplin runs north and south through
the city; Twentieth street runs east and west, and is
in the southern part of the city; Moffett street runs
north and south, west of and parallel with Main street;

Fifteenth street is five blocks north of Twentieth street, and also runs east and west and parallel with Twentieth street. The defendant at the time of the accident, and for a long time prior thereto, had a carline running east on Fifteenth street from Main street to a point called Villa Heights. On the morning of July 5, the deceased entered one of defendant's cars at Moffett and Main streets. He intended to go east to Main street, then north on Main street to Fifteenth street, and there transfer to the car going east on Fifteenth street. He paid his fare and received a transfer for the Fifteenth street car. The deceased had been making this trip frequently and was perfectly familiar with the surroundings. The evidence shows that he remained on the back platform of the car, although there was plenty room inside. He was a man fifty-nine years of age, and weighed about two hundred and fifty pounds.

Just before the car reached Seventeenth street, which was two blocks south of Fifteenth street, the conductor gave a signal to stop the car at Seventeenth street. At the time this signal was given, the conductor thought the car was nearing Sixteenth street, which was the next street north of Seventeenth street. The motorman, in obedience to the signal, checked the speed of his car for the purpose of stopping at Seventeenth street. But before the car stopped, the conductor, discovering his mistake, gave the signal to go ahead, and which signal was obeyed by the motorman, and the car proceeded without making a stop at Seventeenth street.

There is a conflict in the testimony between the witnesses for the respondent and the appellant, as to the management of the car at the time of the accident. The plaintiff's witnesses testify that after the motorman had checked the speed of his car, in obedience to the first signal of the conductor, that when the second signal was given to go ahead, the car started quickly and with a sudden jerk. None of the witnesses for the plaintiff were passengers on the car. The witnesses

for the defendant, including five or six passengers, testified that there was nothing unusual about the movement of the car, and that the same was not started with a quick jerk or movement so as to attract attention. Under these circumstances the question was for the jury and the trial court.

The plaintiff's petition and her instructions, are based upon the theory that her husband passed out upon the back platform of the car for the purpose of alighting therefrom when he reached his destination, and that while he was on the back platform, said car was started with a sudden and unusual jerk, whereby the deceased was caused to lose his hold or balance on said car and to be thrown to the street or pavement. Undoubtedly if the conductor knew, or by the exercise of the care required of a carrier of passengers, could have known, that the deceased was approaching his place of transfer, and that he was leaving his place in the car and going to the platform and steps for that purpose, then the company would owe to him the duty required of such companies in receiving and discharging passengers from their cars. The duty of a motorman in the management of his car at a point where passengers are about to get on or off the car, is different from the care required when he is operating his car at other places. It is a well-known fact that passengers do not wait for the car to be brought to a standstill before leaving their seats and going to the platform for the purpose of alighting. These facts the company must take knowledge of and cannot plead ignorance thereto. On the other hand, if a car should stop in the middle of a block or at a place where it is not expected a passenger would attempt to leave the car, then the degree of care in regard to the sudden starting of the car is not the same as where the car has stopped for the purpose of receiving passengers.

In this case it stands admitted that the deceased at no time entered the car, although there was plenty

room inside, and that he could have obtained a seat and rode until the car was approaching his place of transfer.  There is no evidence in the case that the conductor knew or failed to exercise proper care to know that the deceased was attempting to leave the car at Seventeenth street.  There was a passenger for ·Sixteenth street, and the conductor had no reason to believe that anyone would attempt to leave the car at Seventeenth street.

The true test of the liability of the defendant in this case is not to be determined by the rule regarding the duty of the company to a passenger who is leaving the car as it approaches his destination, but the test of liability in this case is to be measured by the degree of care required of the company to pasengers at other points than nearing their destination.

The evidence in this case discloses that the rear platform of the car was enclosed on the west and south side, and the only opening was at the steps on the right side where passengers were received and discharged. A through passenger riding on the back platform was not in much danger of being thrown from the side of the car by reason of any sudden starting of the car on a straight track.  But if the deceased, although not at his destination, was passing from the platform down the steps with the knowledge of the motorman or conductor, then it was their duty to exercise a high degree of care in the management of the car so that he would not be thrown therefrom by any extraordinary movement of the car.  [Murphy v. Railroad, 125 Mo. App. 269, 102 S. W. 64.]

Instruction No. 1 given on behalf of the plaintiff is misleading, and submits matters concerning which there was no testimony.  One paragraph of the instruction reads: "And if the jury find from the evidence that as said car approached said destination, the said Simpson Ely passed out upon the back platform of said car, for the purpose of alighting from said car when

he reached said destination;" This part of the instruction is squarely in the face of all the evidence. The undisputed fact is that from the time the deceased entered the car until he was injured, he remained on the back platform. If the deceased had been in the car and then arose to go out of the car and on to the platform, it might be a question whether or not his actions should not have been discovered by the conductor in the exercise of that high degree of care required by a carrier of passengers. Then the instruction proceeds: "And if the jury find from the evidence that while the said Simpson Ely was on said back platform and before said car reached said destination said car sustained a sudden and unusual jerk by reason of the defendant's servants carelessly and negligently bringing and causing to be brought, said car to a standstill, or almost to a standstill, and then carelessly and negligently, suddenly applying the power or releasing the brakes on said car, starting the car forward in a sudden and unexpected lurch or jerk whereby the said Simpson Ely was caused to lose his hold or balance," etc.

This part of the instruction immediately follows the part above quoted, and all framed on the theory that the deceased, at the time of the accident, was passing from a place in the car to the back platform as the car was nearing his destination, and while he was in that position, the servants of the defendant carelessly and negligently slackened the speed of the car, and carelessly and negligently applied the power or released the brakes, causing the car to start in an unexpected manner, resulting in the death of plaintiff's husband.

It was evidently the intention of the plaintiff to bring her case within the principles announced in Nelson v. Railroad, 113 Mo. App. 702, 88 S. W. 1119, but that case announces the doctrine applicable to cases wherein the passenger is about to arrive at his testination. In this case the passenger was not at his destination, and in such cases, in order to hold the company

in the management of the car to the same degree of diligence required in the former case, there should be some evidence that the conductor knew, or by the exercise of due care, might have known that the passenger was attempting to leave the car at the unusual place. [Murphy v. Railroad, 125 Mo. App. 269, 102 S. W. 64; Cramer v. Traction Co., 112 Mo. App. 350, 87 S. W. 24; Transit Co. v. Strong, 108 S. W. 394; Cole's Admr. v. Railroad, 113 S. W. 822; McGann v. Railroad, 85 N. E. 570; Hufford v. Railroad, 130 Mo. App. 638, 109 S. W. 1062; Hurley v. Railroad, 120 Mo. App. 262, 96 S. W. 714.]

If the conductor had called Fifteenth street and the car stopped prematurely, but near said street, then the deceased would have had the right to assume that the car had stopped for the purpose of letting him alight therefrom, and it would have been the duty of defendant's conductor, after having called the street, to have known whether the deceased was preparing to alight, and not have started the car while he was in the act of so doing. [Hufford v. Railroad, *supra.*] And it could not be said that the deceased would have been guilty of negligence in taking a position on the back platform under such circumstances. [Wellmeyer v. Transit Co., 198 Mo. 527, 95 S. W. 925; Heinze v. Railroad, 117 N. W. 385.]

The above authorities state the almost universal rule, that if a passenger is about to reach his destination and as the car is stopping he leaves his place and proceeds to the platform or steps for the purpose of alighting when the car has stopped, then if those in charge of the car start the same with an unusual and sudden jerk, and thereby the passenger sustains injuries, the company is liable. On the other hand, the law is as well settled, that the mere starting of a car with a sudden jerk at a time when those in charge of the car did not know, or had no reason to know, that a passenger is about to alight, is not sufficient to make

a case. Authorities above cited; Patterson v. Railroad, 57 N. W. 880; Etson v. Railroad, 68 N. W. 298; Laverty v. Street Co., 98 N. Y. S. 846; Law v. Railroad, 96 N. Y. S. 1019; Hayes v. Railroad, 97 N. Y. 259.

In the case of Peck v. Traction Co., 131 Mo. App. 134, 110 S. W. 659, the court said: "It seems to be clear that although a passenger may be improperly engaged in the act of alighting from a street car before it ·has come to a stop, yet it is culpable negligence in the conductor knowing what the passenger was doing, to cause the car to be suddenly started forward with such suddenness and force as to throw him to the ground."

It is true that under the degree of care required by the carrier of passengers, that the company may be held liable in an action for damages by a passenger on account of injuries received by the violent or extraordinary starting of the car with a jerk, but the character of the act between this and the case where a passenger is attempting to alight at his destination, are not the same. There is hardly a car or a railroad train but what there is a certain amount of jerking or sudden movement in the operation thereof.

As said in Etson v. Railroad, 68 N. W. l. c. 298: "It is a natural law that inertia is not instantly overcome, and that a start, or accelerated motion, tends to throw down one riding upon a car." These things the ·. passenger expects in ordinary travel, but when the car is about to stop for passengers to alight, or after passengers have entered the car, then it ·is the duty of the company to exercise the highest possible degree of care and foresight consistent with the operation of the car, to see that a sudden or violent jerk does not occur.

We are of the opinion that in order for the plaintiff to recover in this case, it will be necessary to show something more than "an unusual or unexpected jerk of the car," as that term is understood when a car is

stopping to permit a passenger to alight, but it will be necessary to show either that the appellant's servants knew, or might have known by the exercise of proper care, that the deceased was about to alight, or that the jerk of the car was an unusual, unexpected and extraordinary one, considered with the fact that the car was not stopping for the purpose of permitting passengers to alight.

It will not be necessary to notice the other questions urged by appellant for a reversal of the judgment. We are asked by appellant to reverse the cause without remanding it. Under the petition as it is now framed, this request should be granted, but under our liberal statutes regarding amendments, as interpreted by the courts, we are of the opinion that the plaintiff may be able to amend her petition so as to present the case on the theory above indicated, and accordingly the judgment will be reversed and the cause remanded. All concur.