EVAN HUDSON, Respondent, v. SOUTHWEST
MISSOURI RAILROAD COMPANY, Appel-
lant.

Springfield Court of Appeals, August 5, 1913.

1. STREET RAILROADS: Negligence: Failure to Signal at Cross-
ings. The common law makes it actionable negligence for a
car to approach or pass over a public crossing at a rapid and
dangerous rate of speed, without giving sufficient and timely
warnings.

2. ————: Failure to Give Signals at Crossings: Negligence:
Question for Jury. It is a question for the jury whether or
not a railroad is guilty of negligence in failing to give timely
and effective signals at public highway crossings, unless the
facts are such that only one reasonable inference can be drawn
therefrom.

3. RAILROADS: Crossing Signals: Statutory Provisions: Review
of. Sec. 3140, R. S. 1909, which requires a bell or a steam
whistle to be placed on locomotive engines and to be sounded
eighty rods from each crossing, is examined and its provisions
reviewed. *Held*, not applicable to the operation of an ordinary
single trolley car propelled by electricity.

4. ————: Signals at Crossings: Statutory Provisions. Sec. 3140,
R. S. 1909, covering signals by locomotives at highway cross-
ings, is an arbitrary enactment, designed to apply to specific
conditions and instrumentalities.

5. ————: Statutory Provisions as to Signals: Not Applicable to
Street Railroads. Sec. 3140, R. S. 1909, requiring certain signal
attachments to be maintained on locomotive engines and cer-
tain signals given on approaching crossings, *held* not applicable
to trolley cars running over a roadbed built originally for an
ordinary railroad: *held, further*, that the fact that the defend-
ant electric company is incorporated under the general rail-
road act does not make the statute applicable.

Hudson v. Railroad.

**On Motion to Modify Judgment.**

6. **PLEADINGS: Amendments: Liberality in Allowing.** Amendments to pleadings are allowed with great liberality under the Code.

7. ———: **Amendments: Changing Cause of Action: Statutory and Common Law Negligence.** In an action against a street railroad, plaintiff based his right of action solely on the defendant's negligence in failing to give warning signals of the approaching car as required by statute. *Held*, that an amendment so as to charge negligence at common law in failing to give proper signals is not a change in the cause of action.

8. **PLEADINGS: Amendments: New Allegations.** Merely because allegations of new facts, essential to constitute a cause of action, which necessititate new and additional evidence to support same, are introduced in the petition by amendment, the cause of action is not necessarily changed.

9. **APPEAL AND ERROR: Pleadings: Amendments after Reversal.** Allowing amendments before a new trial, after reversal, is different from allowing amendments during or after the trial so as to present new issues.

Appeal from Jasper County Circuit Court, Division No. Two.—*Hon. David E. Blair*, Judge.

REVERSED AND REMANDED.

*McReynolds & Halliburton* for appellant.

(1) The petition fails to state a cause of action against the defendant. The defendant being an Electric Railroad Company operating under the trolley system, the provisions of Sec. 3140, R. S. 1909, do not and cannot apply to defendant company in the operation of its cars. Cowan v. Tel. Co., 149 Mo. App. 566; Henson v. Railroad, 110 Mo. App. 598; Fallon v. Street Railway, 171 Mass. 249, 50 N. E. 546; Jarvis v. Hitch, 65 N. E. (Ind.) 608; Central Nat'l Bank v. Horse Railway, 13 Allen, 105; Transit Co. v. Andis, 72 N. E. 145; Stranhan v. Sea View Railway Co., 84 N. Y. 308; Murphy v. Wilson, 27 Alb. Law J. 505; Thying v. Railroad, 156 Mass. 13, 30 N. E. 169; Rodriques v. Rail-

road, 210 Mass. 305, 96 N. E. 684.   (2)   The evidence
showing that, at a point 35 feet east of the crossing,
plaintiff by looking southwest could have seen 220 feet
southwest of the crossing along the railroad track, then,
under these physical facts it is evident that if plaintiff
had looked or listened before entering on the railroad
at the crossing he would have seen or heard the car
coming toward him.   Sanguinette v. Railroad, 196 Mo.
466; Hayden v. Railroad, 124 Mo. 566; Huggart v.
Railroad, 134 Mo. 673; Schmidt v. Railroad, 191 Mo.
215; Porter v. Railroad, 199 Mo. 82; Walker v. Rail-
road, 193 Mo. 453; Mockowick v. Railroad, 196 Mo.
550; Stoller v. Railroad, 204 Mo. 619; Payne v. Rail-
road, 136 Mo. 562; Kelsay v. Railroad, 129 Mo. 362;
Kreis v. Railroad, 148 Mo. 235; Hook v. Railroad, 162
Mo. 569; Jones v. Barnard, 63 Mo. 501; Lien v. Rail-
road, 79 Mo. App. 475; Shaub v. Railroad, 133 Mo.
App. 466; Gumm v. Railroad, 141 Mo. App. 306;
Wheeler v. Wall, 157 Mo. App. 44; Laun v. Railroad,
216 Mo. 563; Holland v. Railroad, 210 Mo. 338; Stoller
v. Railroad, 204 Mo. 619; Holland v. Railroad, 210 Mo.
351; McCreery v. United Railways, 221 Mo. 18; Clark
v. Railroad, 242 Mo. 570, 148 S. W. 472; Burge v. Rail-
road, 244 Mo. 76, 148 S. W. 925; Dyrcz v. Railroad,
238 Mo. 33, 141 S. W. 865; Farris, Admr. v. Railroad,
167 Mo. App. 392, 151 S. W. 979; Green v. Railroad,
192 Mo. 139.

*W. R. Shuck* and *R. M. Sheppard* for respondent.

(1)   The court did not commit error in submitting
this case to the jury; the defendant company is incor-
porated under the general railroad laws; it cannot claim
the benefits of this act and at the same time disclaim
the burdens and responsibilities imposed upon railroad
companies by the Act under which it is incorporated.
Baker v. Railroad, 147 Mo. 155; Railroad v. Wheeler,
63 Ill. App. 193; Booth on Street Railways (2 Ed.), Secs.

431, 432, N. 7; Riggs v. Railroad, 120 Mo. App. 355; McQuade v. Railroad, 200 Mo. 156; Higgins v. Railroad, 197 Mo. 300; 33 Cyc. 665; Railroad v. Jacobs, 12 L. R. A. (Ala.), 630; Railroad v. Lohe, 67 L. R. A. (Ohio) 637; Aurora v. Traction Co., 81 N. E. 544; Spaulding v. Railroad, 80 N. E. 327; Commonwealth v. Railroad, 133 So. 230; Elliott on Railroads (2 Ed.), secs. 1155, 1156, 1158; Railroad v. Moffett, 54 Kan. 284, 44 Pac. 67; Sec. 3140, R. S. 1909.    (2)  The appellant's second point is that a car traveling toward the northeast could have been seen by the respondent in sufficient time to have stopped his horse and prevented injury if he had been looking.    It is true this is the appellant's evidence, but the evidence of the respondent is to the contrary.    As to whether respondent could have seen the car was a controverted question, which was submitted to the jury under proper instructions, and this issue found in favor of the respondent.

STURGIS, J.—The plaintiff recovered $150 in the circuit court for damages caused by one of defendant's interurban electric cars colliding with his horse and buggy at a public crossing between Joplin and Carthage. The cause was commenced in a justice of the peace court, where plaintiff stated his cause of action as follows:  "Plaintiff states that defendant is and was at all times hereinafter mentioned a corporation organized under the laws of the State of Missouri and liable to be sued as such in the courts of this State, and is in the possession of and operating a line of railway from Joplin in the State of Missouri to Carthage in said State. Plaintiff further states that the tracks of defendant are laid across a certain highway in said county, being known as the Carterville and Carthage road, leading from Carterville to Carthage.    That on the 1st day of September, 1912, while plaintiff was driving in a buggy along and upon said highway at a point of a crossing of defendant's track, known as Black's Crossing be-

tween Carterville and Lakeside on defendant's railroad outside of any city, a certain motor car, propelled by electricity, was driven along and · upon defendant's railroad, upon and across said public highway and at the said crossing thereof, and the agents and servants of defendant in charge of said motor car, wholly failed to ring the bell and wholly failed to sound the whistle at a distance of eighty rods from said crossing, and to sound said bell and whistle at intervals until said car had crossed said highway, by means and in conse-quence of which default and neglect of defendant's said servants and agents said car ran and struck with great force and violence the said buggy and horse of plaintiff, throwing plaintiff violently upon the ground, totally destroying the buggy, tearing the harness and killing plaintiff's horse. That the injuries to the buggy and harness was forty dollars, that the fall bruised and injured plaintiff, that the horse so killed was worth $150. Wherefore plaintiff says that by reason of the premises he has been damaged in the sum of $300 for which he asks judgment."

The evidence showed that plaintiff's horse and buggy was injured in the manner and to the extent stated. It also appears that the car colliding with plaintiff's horse was an ordinary trolley car or street car propelled by electricity; that it was equipped with a "gong" rather than a bell, which was sounded by pressing or kicking a button with the foot, but there is no evidence of its being equipped with any kind of a whistle. The collision took place at a country road crossing. It is claimed by defendant that the gong was sounded vigorously at a distance of 250 to 300 feet before reaching the crossing but it is conceded that the defendant did not ring any bell, even if the gong is a bell, at a distance of eighty rods from the crossing and continue to ring the same until the crossing was passed. It will be seen that the sole ground of negligence charged is a failure to comply with the provisions of section 3140

of article 2, chapter 33, Revised Statutes 1909, entitled "Railroad Companies," which is as follows:

"Sec. 3140.    Bell and whistle at crossing—penalty. A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street, or a steam whistle shall be attached to such engine and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals until it shall have crossed such road or street, under a penalty of twenty dollars for every neglect of the provisions of this section to be paid by the corporation owning the railroad, to be sued for by the prosecuting or circuit attorney of the proper circuit, within ten days after such penalty was incurred, one-half thereof to go to the informer, and the other half to the county; and said corporation shall also be liable for all damages which any person may hereafter sustain at such crossing when such bell shall not be rung or such whistle sounded as required by this section: Provided, however, that nothing herein contained shall preclude the corporation sued from showing that the failure to ring such bell or sound such whistle was not the cause of such injury."

The cause was submitted to the jury by an instruction for plaintiff stating that if "a certain car propelled by electricity, was driven along and upon defendant's railroad and upon and across said public highway at said crossing, and that the agents and servants of defendant in charge of said motor car wholly failed to ring the bell at a distance of eighty rods from said crossing and to sound said bell at intervals until said car had crossed said highway and that by reason thereof and in consequence of the defendant, its agents and servants, failing to so ring said bell, if they did fail, and without any fault or neglect on the part of plain-

tiff, said car ran against and struck with great force and violence plaintiff's horse and buggy, thereby killing plaintiff's horse and injuring his said buggy, you will find the issues in favor of the plaintiff." This instruction predicates negligence solely on the failure to ring the bell at the distance provided by the statute and not on failure to sound the whistle in the alternative, as is usual and proper in cases falling under the statute, presumably 'for the reason that, as defendant's car was not equipped with any whistle, it was useless to submit the question of its being sounded at eighty rods from the crossing or otherwise.

The question presented for our decision is whether or not defendant in operating single trolley cars propelled by electricity on its road passing through the country is guilty of negligence in failing to comply with the provisions of section 3140, supra. That section provides for specific kinds of instrumentalities for giving warnings, to-wit, a bell and steam whistle, to be attached to a specific kind of motor vehicle, to-wit, a locomotive engine, and to be sounded at a specific distance from each road crossing. Does such statute apply to the ordinary electric cars?

The question is not, as respondent suggests, as to whether such electric cars are to be run without regard to the rights of the public at road crossings. The common law, in the absence of any statutes, makes it actionable negligence for any car to approach or pass over a public crossing at a rapid or dangerous rate of speed without giving sufficient and timely warnings. The duty to do this is always commensurate with the danger to the public; and the distance from the crossing, and the kind and loudness of the danger signal to be given would depend on the circumstances of each case—the rate of speed, the obstructions to sight and hearing, the probability of persons being caught unawares, etc. [Jackson v. Railroad, 171 Mo. App. 430, 156 S. W. 1005, decided at the last term of this court,

and cases there cited.] The law in this respect is correctly stated by Judge SHERWOOD in Lamb v. Railroad, 147 Mo. 171, 204, 48 S. W. 659, 51 S. W. 81, and, though said in a dissenting opinion, the dissent was not on this point, as follows: "But while we say this, at the same time we say that outside of the statute, and under the principles of the common law, a railroad corporation would not perform its full duty of ordinary care, unless those employed on a switching engine, engaged in its customary avocation, should ring its bell, or if necessary, take any other precaution adapted to the exigency of the situation. It is this exigency which, like the mercury in the thermometer, determines to what degree prudence shall rise in order to reach the mark of ordinary care."

In fact a railroad company does not always discharge its full duty in this respect by merely giving the statutory signals. The common law at times imposes other and greater precautions to avoid injury to persons rightfully on or crossing a railroad track than does the statute. Thus it was said in Hanlon v. Railroad, 104 Mo. 381, 389, 16 S. W. 233, as follows: "The rule and the qualification of it require precautions to be observed by both the railroad company and the traveler, when using a public highway in common. The precautions to be used by each must necessarily vary, with varying circumstances, and no positive rule can be laid down which can be made a test in every case. One rule for their mutual government is imperative, which is the duty and obligation for each to watch for the presence of the other, one to avoid being injured, and the other to avoid causing injury. The railroad company must give some regard to the known imprudence of mankind and not content itself with the *mere obedience to the law requiring signals to be given,* and the traveler must, in like manner, take precautions for his own safety, and not depend entirely upon the

railroad company to protect him, or give him timely notice of danger."

We indorse what was said in Baker v. Railroad, 147 Mo. 140, 162, 48 S. W. 838, with reference to running a train of five cars over a road crossing with no engine attached: "What the defendant should have done under the circumstances is not for me to say. [Burger v. Railroad, 112 Mo. 246.] Beyond a doubt the warning given was far inferior to the statutory one. Doing as it did, it could not give that one, yet it should have done something equally as effective to protect the travelers at the crossing; not to do so is negligence." And in Burger v. Railroad, 112 Mo. 238, 246, 20 S. W. 439, the law is stated thus: "We do not think it follows, from the fact that the statute only enjoins these crossing signals, that no others are required under any circumstances. Our courts have declared, over and over again, that the greatest diligence, watchfulness and care should be observed by those running and operating trains in towns and cities, especially on and over streets and other public places therein. These duties they owe to everyone who has the right to use such public places in common with them."

Whether or not a railroad of any kind is guilty of negligence in failing to give timely and effective signals of danger in operating a car or train of cars across a public highway under a given state of facts, is, unless the facts are such that only one reasonable inference can be drawn therefrom, a question for the jury. So that, had the plaintiff in this case based his cause of action on a negligent failure to give timely and effective warnings as it approached the crossing in question at a high rate of speed, twenty to twenty-five miles per hour, knowing that trees and brush obstructed the view of a traveler approaching the crossing until within a few feet of it, the case would have presented a different aspect.

As it is presented here, plaintiff's case is based solely on the failure of defendant to comply with the terms of the statute prescribing the exact kind of danger signals to be given and the distance from the crossing. The question presented is not exactly whether this statute is applicable at all to railroads using electric instead of steam motive power, but rather the more narrow question of its being applicable to the operation of an ordinary single trolley car propelled by electricity, as was this one. We think it is not, and for many reasons. This statute requiring a bell and steam whistle to be placed on locomotive engines and to be sounded eighty rods from each crossing was enacted at an early date and it is and always has been in the chapter relating to railroads. [See Sec. 46, p. 436, R. S. 1855.] Electric street and interurban cars such as this one were unknown and unthought of at that time. The terminology used and still maintained in the statute, to-wit, "locomotive engine" and "steam whistle" unmistakably point to motor engines generating and driven by steam power. In speaking of what is a railroad operated by locomotive steam the court, in Stranahan v. Sea View Ry. Co., 84 N. Y. 308, 314, said: "It plainly has reference to railways moving cars in the ordinary way by means of locomotive engines. . . . A locomotive engine is one which moves cars by its own forward and backward motion."

Not only is the common and ordinary meaning of "locomotive engine" one that is operated by steam in drawing or propelling cars, and that is the way we are to construe words (Sec. 8057, R. S. 1909), but the statute in speaking of attaching a "steam whistle" to such engine unmistakably gives it that meaning. If the statute is to be literally enforced against electric trolley cars, then a steam boiler at least must be kept in operation on such cars for no other purpose than to blow the whistle. When it is remembered that ordinary single electric cars, such as this one was, can be controlled and

stopped while going at twenty to twenty-five miles per
hour within a distance of three hundred to four hundred
feet, the unreasonableness of the statute in requiring
the bell or whistle to be sounded in all cases and under
all conditions and regardless of the speed or any ob-
structions continuously from a point eighty rods—
1320 feet—therefrom when approaching a crossing,and
to suffer a penalty thereby imposed for each failure so
to do, marks this statute as not applying to such cars.
The ordinary gong on such a car could not very likely
be heard that distance and an ineffective warning is no
warning at all.

That even all trains of cars in approaching and
passing over a road crossing are not required to strictly
comply with this statute is recognized in Baker v. Rail-
road, 147 Mo. 140, 160, 48 S. W. 838, where the court,
speaking of five cars being so operated without an en-
gine, said: "Counsel say that there is no *statute*
against doing what it did at this time, and that there is
no penalty incurred as in case of an engine going across
a road without ringing a bell or sounding a whistle. *I
agree with them*, but when they say that it follows from
this that if an engine is not used, and cars alone are run
across, that therefore in such case it need give a less
effective warning to the traveler, I say that it is a
*non sequitur*. If the danger is increased by its neglect,
I cannot see why the law should for that reason suffer
a less effective warning."

In Henson v. Railroad, 110 Mo. App. 595, 85 S. W.
597, the court held that a "speeder" operated by a
gasoline engine on a railroad track was not a locomotive
within the meaning of section 3146, Revised Statutes
1909, relating to stock being injured by fright caused by
passing locomotives and trains. The court said: "The
word 'locomotive' is used in conjunction with the word
'train' in the section under review. When so used, the
ordinary meaning of the term is the steam locomotive
in common use by railroad companies for the purpose

of moving their trains and cars, therefore, the machine or car by which plaintiff's horse was frightened is not a locomotive within the meaning of the section. It follows that the instruction in the nature of a demurrer to plaintiff's evidence should have been given.''

The St. Louis Court of Appeals, in the case just mentioned, cites with approval the cases of Fallon v. West End St. Ry. Co., 50 N. E. 536, and Jarvis v. Hitch, 65 N. E. (Ind.) 608. In the first of these cases we find that the court said: "But we think by the words 'locomotive engine or train upon a railroad' must be understood a railroad and locomotive engines or trains operated and run, or so originally intended to be operated and run in some manner and to some extent by steam. This, undoubtedly, was the sense in which the words were used by the Legislature *when the statute was enacted;* and we do not feel justified now in giving them the broad construction for which the plaintiff contends. Possibly a railroad, when the motive power has been changed in part or altogether from steam to electricity or some other mechanical agency, but retains in other respects the characteristics of a steam railroad, would come within the purview of the act. It is not necessary, however, to decide that question now. The defendant is a street railway operated by electricity, and running the usual street car in the usual manner. We think that a car belonging to it, and operated in the manner in which cars upon street electric lines usually are, cannot be said to be a locomotive engine or a train upon a railroad, within the meaning of the statute in question.''

Even the liberal definition of a ''locomotive engine'' given by the Indiana Appellate Court in Jarvis v. Hitch, supra, and quoted by the St. Louis Court of Appeals in Henson v. Railroad, supra, was criticised by the Supreme Court of that State in the same case of Jarvis v. Hitch, 161 Ind. 217, 67 N. E. 1057, which held that a pile driver consisting of a steam engine placed on a flat

car at one end and a driver used in raising the hammer at the other end, all forming one machine capable of self-propulsion by means of a sprocket wheel on an axle under the boiler connected by a chain with the engine, the chain being removed when drawing a pile, is not a "locomotive engine," within Burns' Revised Statutes 1901, Mo. 7083, subd. 4.

The Supreme Court of Alabama in Birmingham Ry. Co. v. Greene, 58 So. 801, a case very similar in its facts to this one and involving the applicability of a statute similar to ours to an electric railroad similar to this one, determined this very question now at issue adversely to the respondent's contentions. The court there said: "Our courts cannot, with a due regard to the unquestioned and well-recognized rules of statutory construction, stretch those statutes so as to make them apply to changed conditions, even though we give full significance to the knowledge that the enactment is a regulation affecting public safety, when the plain language of the statute itself is such as to make it totally inapplicable to those new things resulting from changed conditions and different modes of travel. The intent of the particular statute is first to be sought in the language of the statute itself." [To the same effect is Birmingham Ry. Co. v. Osburn, 56 So. (Ala.) 599.]

The case principally relied on by respondent as holding the contrary view is Commonwealth v. Louisville Ry. Co., 133 S. W. (Ky.) 230. This case, however, appears to be based largely on a statute of that State which is spoken of thus: "Furthermore, section 842-a was intended to bring interurban electric railroad companies under the law governing railroad companies generally, both as to duties and rights in so far as it was practicable to do so. The statute recognized the fact that there might be some instances in which regulations originally applicable to steam railroads could not be made practicable in all respects when applied to electric railroads. But this condition was expressly pro-

vided for by the language of the statute which made such a regulation apply to electric railroads so far as it was practicable. *If the regulation is capable of being complied with by an interurban electric railroad company with its available means or resources, either in whole or in part*, to that extent it is practicable and must be complied with. And in determining the question of practicability of a regulation, we are not to be restricted to a consideration of the instruments or methods identical with those specified in the statute originally applicable to steam railroad; for if any improvements have been adopted to accomplish the same general purpose of the engine, the company must still obey the regulation in so far as it is practicable." We know of no statute in this State making the provisions of section 3140, Revised Statutes 1909, applicable to electric cars.

We are not impressed with the argument that what is termed the "spirit" rather than the terms of the statute in question would allow and authorize its adaptation to new and different *means* of giving the signals required but will not permit any variation in the *distance* from the crossing at which same are to be given. Such argument gives the statute much flexibility as applied to the kind of signals to be given, premitting any kind of a noise to be substituted for the kind designated in the statute, but insists on the utmost rigidity when applied to the distance. This is hardly logical. The common law allows this flexibility in adapting itself to new conditions and new instrumentalities, both as to the kinds of signals and distance to be sounded, because the common law is founded on general principles applicable to all conditions, while the statute is an arbitrary enactment designed to be applicable to specific conditions and specific kinds of instrumentalities only.

Nor do we think that it makes any difference that the defendant company is incorporated under the general railroad act or that the roadbed over which trolley

cars are now run by electricity was built by an ordinary railroad company or originally for an ordinary railroad. Such change might readily take place or both kinds of roads and cars might be operated by the same company. The real question here is whether the statutory requirement as to giving particular kinds of signals at a specific distance from a road crossing and which by the terms of the statute is made applicable only to locomotive engines and trains so propelled shall be made applicable to all kinds of cars or motor vehicles running on iron rails. We have noted that the courts have not so construed it. It is pointed out that the original Railroad Act, section 27, p. 426, Revised Statutes 1855, of which act the section now under consideration was a part, provided for cars carrying passengers or freight propelled "by the power or force of steam or of *animals* or by *any mechanical power*," and it is certainly significant that the signal statute was by its terms made applicable to only the one kind propelled "by the power or force of steam"—the "locomotive engine." While, as before stated, we do not believe electric cars were contemplated at that time, yet there were other kinds then running on ordinary railroads, to-wit, those propelled by animals and certainly by some kinds of mechanical power, to which the statute in question is not made applicable either by its express terms or by any reasonable construction.

Under these views of the case it is not necessary for us to decide whether or not the plaintiff under the facts as now presented was guilty of contributory negligence.

It results, therefore, that this case must be reversed but, as the gist of plaintiff's action is negligence in failing to give warning signals of the approaching car, the case will be remanded that plaintiff may, if he sees fit to do so, amend his complaint and try the case on common law negligence in that respect. It is so ordered.

*Farrington, J.*, concurs. *Robertson, P. J.*, dissents in separate opinion.

173 Mo. App. 40

## DISSENTING OPINION.

ROBERTSON, P. J.—What is now section 3140, Revised Statutes 1909, concerning signals to be given at railroad crossings, originated in the Act of February, 1853 (Session Acts 1853, p. 21, sec. 46), and was carried unchanged into the Revision of 1855, page 436, as section 47, reading as follows:

"Sec. 47.  A bell shall be placed on each locomotive engine, and be rung at a distance of at least eighty rods from the place where the railroad shall cross any traveled public road or street, and be kept ringing until it shall have crossed such road or street; or a steam whistle shall be attached to each locomotive engine, and be sounded at least eighty rods from the place where the railroad shall cross any such road or street, except in cities, and be sounded at intervals, until it shall have crossed such road or street, under a penalty of twenty dollars for every neglect of the provisions of this section, to be paid by the corporation owning the railroad, to be sued for by the circuit attorney of the proper circuit, within ten days after such penalty was incurred; one-half thereof to go to the informer, and the other half to the county; and said corporation shall, also, be liable for all damages which shall be sustained by any person, by reason of such neglect."

Immediately following that section was what is now a portion of section 3141, Revised Statutes 1909 which required a sign containing the words, in letters of the size of at least nine inches, "Railroad Crossing: Look Out for the Cars."

In the same act, R. S. 1855, page 426, section 29, seventh paragraph, railroads were authorized to take and convey persons and property on their railroads, "by the power or force of steam or of animals, *or by any mechanical power*, and to receive compensation therefor."

Hudson v. Railroad.

At the time these laws were enacted there were less than fifty miles of railroad in this State, but more in course of construction, and no doubt that legislation then appeared as much exaggerated, as applied to the operation of railroads at that time, as does the insistence of respondent in this case that section 3140 should be made applicable to electric cars.

It is claimed by the respondent and not denied by the appellant, and so assumed in the majority opinion, that the defendant is incorporated under the general railroad law; consequently, if that is a fact, the reasoning adopted in the case of Commonwealth v. Louisville R. R. Co., 133 S. W. 230, cited in the majority opinion, would be as much in point as if there were a provision in our statute stating that the provisions of section 3140 are applicable to electric cars. I think the defendant should be governed by every provision of that act, if so incorporated, unless there is such a showing made and presented to us as will demonstrate clearly that it is impracticable for the defendant to obey this mandate of the Legislature, or that to require of it such obedience would be unreasonable or unjust.

I think it is true that electric cars of the character of the one involved in this case may have been thought of when the original railroad act was adopted. In 1835 an attempt was made to build an electric railroad in Vermont. In 1838 an electric locomotive was built in Scotland and in 1850 a sixteen-horse power electric locomotive was run on the Baltimore & Ohio railroad at a speed as high as nineteen miles per hour. At about the same time a model electric railroad was constructed which received its current through the rails. It is not improbable that the words, "any mechanical power," in the railroad act, may have been prompted by what was being attempted and accomplished with electricity.

Section 3140 does not require *both* the bell and the whistle to be placed upon and used as a signal for the vehicle used as a means of conveyance of passengers and

freight by any railroad.    Either meets the requirements of the statute.    [Kenney v. Railroad, 105 Mo. 270, 285, 15 S. W. 983, 16 S. W. 837.]

When this legislation was first enacted there were, as far as I am able to learn, no other known signals than the steam whistle and the bell, both of American origin, and it may have been for the very reason that it was contemplated that the steam whistle might not always be conveniently used that the *alternative* signal by a bell was provided for.    I think unquestionably what the Legislature had in view was the *signal* at crossings. The fact that a *steam* whistle is mentioned does not to my mind lead to the conclusion that a similar signal equally effective as a steam whistle would not meet the requirements of the statute.    The signal being the thing intended, there appears no reason for exempting trains or cars propelled by electricity simply because the statute mentions locomotive engines, even if strictly and technically speaking an electric car cannot be properly classed as a locomotive engine.    The thing which is within the object, spirit and the meaning of the statute is as much within the statute as if it were within the letter.    [Bryant v. Russell, 127 Mo. 422, 30 S. W. 107; Schawacker v. McLaughlin, 139 Mo. 333, 40 S. W. 935.]    The letter of the statute may be enlarged or restrained according to the true intent of the framers of the law, so as to let the reason of the law prevail over its letter and not lead to absurd consequences.    [Stubbs v. Mulholland, 168 Mo. 47, 73, 67 S. W. 650; Andrew County v. Schell, 135 Mo. 31, 42, 36 S. W. 206.]    In the case of Bingham v. Birmingham, 103 Mo. 345, 15 S. W. 533, words were ignored to arrive at the legislative intent, and almost numberless other instances might be cited of eliminating and adding words in arriving at the legislative intent in construing statutes.

If the defendant in this case, as above mentioned, is a corporation organized under the general railroad act in which section 3140 is found, then it must of ne-

cessity be governed thereby unless there is some good reason for exempting it therefrom. It cannot accept the benefits of the law and deny the burdens, without just cause.

I do not apprehend that anyone will contend, or that any court will declare, that it is essential for an electric car to carry a steam boiler for the purpose of operating a whistle, and especially so since the law can be complied with and no whistle attached or used. Neither do I imagine that anyone is going to insist, or that any court is likely to hold, that if a steam engine gave its only alarm with any other similar whistle as effective as a steam whistle that the provisions of this act have been thereby violated.

I do not believe it is the duty of this court to assume as a matter of law that an electric car cannot or should not give one of the signals provided for in that section of the statute. While it is true that there is a common law liability imposed upon railroads for their failure to give proper signals such a distance from the crossing as will most likely forewarn anyone intending to cross there so as to prevent them from approaching or placing themselves in a perilous position, I do not believe that the courts should by reason of that fact arbitrarily abolish the legislative standard. The same process of reasoning would justify the repeal of the statute as to all railroads. If we reason that by virtue of the fact that an electric car can be stopped in a shorter distance than can a train pulled by a steam engine, and that, therefore, the provisions of the law under which it is incorporated should not apply to it, then by the same process of reasoning the statute should be relaxed as against a train pulled by steam power in proportion to the size of the train, its load and its equipment for stopping. The object, I think, that was intended to be accomplished by the signal section and the signboard section was to prevent persons from placing themselves

within a radius where they would likely be exposed to the dangers incident to all railroad crossings.

The majority opinion is apparently based on the assumption that electric cars can be stopped with ease as compared with trains pulled by a steam engine, since there was no testimony on the subject. Again, it is held as a matter of law that it is impractical for the defendant to equip its cars with a *bell* or a whistle, and to sound one, as the statute provides, when there is no testimony that it is impractical and unnecessary for the defendant to do these things. Judicial cognizance should be exercised by courts with caution. [Timson v. Coal & Coke Co., 220 Mo. 580, 597, 119 S. W. 565.] Judicial notice should not be taken of facts "which the court cannot know without resort to expert testimony or other proof." [Id., p. 596; see also St. Louis v. Niehaus, 236 Mo. 8, 139 S. W. 450.]

In the case at bar the motorman testified that he was going at the rate of about twenty miles an hour and that he could stop his car in about three hundred feet. In the case of Harshaw v. Railroad, 173 Mo. App. 459, 159 S. W. 1, recently decided by this court, the record discloses testimony that tends strongly to show that a passenger train, pulled by a locomotive, going down grade at the rate of twenty-five miles per hour, was stopped within three hundred feet. I do not cite this as evidence, nor as an argument for or against the proposition to require the defendant to comply with section 3140, but to the point that this court should not base conclusions on doubtful claims not proven, but which if they are assumed must be improperly based on judicial notice.

I am not prepared to hold as a matter of law that, as shown by the record in this case, it is impractical or unjust to require of the defendant that it have upon its cars *one* of the signals required by said section of the statute and that it be used eighty rods from all crossings in the country. Until a showing is made to evidence

the propriety of holding the contrary I think a court should not supply the absence of such evidence by assuming facts that may not exist.

## ON MOTION TO MODIFY JUDGMENT.

STURGIS, J.—Appellant insists that this case should be reversed absolutely instead of being reversed and remanded with leave to amend the petition so as to state a common law action for negligence in failing to give sufficient warning of the car's approach to the road crossing in question. It is claimed that such an amendment comes within the inhibition of substituting a new and different cause of action instead of being an amended statement of the cause of action originally sued on.

It is conceded that our courts favor the right to make amendments in pleadings and that our statutes are liberal in this respect up to the point of substituting one distinct cause of action for another, but that amendments must stop before reaching that point. We indorse what is said in Ingwerson v. Railroad, 150 Mo. App. 374, 381, 130 S. W. 411, 412, as to what amendments do not change the cause of action: "Amendments are allowed under the code with great liberality as appears from our statute, sections 657, 659, Revised Statutes 1899. Amendments are allowed under section 657 when they do not change substantially the claim or defense, and the better considered authorities go to the effect that they will be allowed as long as the general identity of the original transaction affording the ground of complaint is maintained or adhered to. As long as the gist of the action remains the same in the proposed amendment, though the alleged incidents are different, it is regarded as the same cause of action and not the substitution of another, but the authorities rule that the proposed amendment must not only relate to the same transaction, but must adhere as well to the con-

tract or injury originally declared upon, sufficient, at least, to maintain in a general way the identity of the cause of action first stated, so that the character of the proof will remain about the same." [See also Clothing Co. v. Railroad, 71 Mo. App. 241, 247, approved in Walker v. Railroad, 193 Mo. 453, 477, 92 S. W. 83.]

We are not persuaded that a change in the allegations of the petition for failure to give the signals required by statute in approaching the road crossing to allegations of failure to give signals required at common law, works a change in the cause of action. It is still an action based on the negligent failure to give proper and timely warning of danger when a rapidly moving car approaches a public road crossing and the gist of the action is not changed. In Lynn v. Railroad, 74 Mo. 167, 170, the plaintiff combined common law negligence with the statutory negligence in this respect in one statement and submitted both kinds of negligence to the jury under one instruction. The court said: "Nor for the same reason was error committed in embracing in the instructions, given at plaintiff's request, both the grounds on which he relied for a recovery, since *both those grounds constituted but one cause of action*, that cause of action being the killing of plaintiff's cattle, and the statement setting forth, as the means by which that injurious result was brought about, the failure of the defendant in its statutory duty and its negligence in other particulars. . . . If, on the trial, he proves, for instance, that the injury complained of arose from the failure of the company to ring the bell and blow the whistle, he makes out his case. If he proves that the injury was caused by the negligence of the company in running its cars, he also succeeds; and he is entitled to the same measure of success, if he establishes that the injury was the compound result of negligence and failure in the performance of a statutory duty." In Goodwin v. Railroad, 75 Mo. 73, the court held that under a complaint charging

common law negligence in so carelessly running a train as to kill a steer on a public road crossing, proof of a failure to give the signals required by statute was admissible and would sustain the charge. [Braxton v. Railroad, 77 Mo. 455, 458.] This can hardly be true if statutory negligence and common law negligence in this respect constitute separate and distinct causes of action. See also the dissenting opinion of Judge BIGGS in Rippee v. Railroad, 71 Mo. App. 557, 561, followed by the Supreme Court in 154 Mo. 358.

The mere fact that allegations of new facts, essential to constitute a cause of action and necessitating new and additional evidence to support same, are introduced in the petition by an amendment does not brand the amendment as introducing or substituting a new cause of action. [Clothing Co. v. Railroad, 71 Mo. App. 241 247.] In the case of Showen v. Railroad, 164 Mo. App. 41, 148 S. W. 135, the case was reversed because the petition was lacking in the averments essential to state a cause of action, but it was remanded for further trial, which could only be had after an amendment of the petition supplying the essential averments and necessitating new and additional evidence to support the same. Such also was the action of the Supreme Court in Mathieson v. Railroad, 219 Mo. 542, 118 S. W. 9, and in Barker v. Railroad, 91 Mo. 86, 14 S. W. 280, and of the Kansas City Court of Appeals in Field v. Street Railway, 21 Mo. App. 600, and Clemings v. Railroad, 21 Mo. App. 606. This court, in Greer v. Railroad, not yet published, has recently followed these and numerous like cases remanding for new trial a case where the petition must be amended to supply averments essential to the statement of a cause of action. Where a case is reversed and remanded without directions a new trial is ordinarily implied and, where the petition is adjudged defective, a permit to amend must also be implied. [Rock Island Imp. Co.

v. Corbin, 98 Mo. App. 489, 492, 72 S. W. 782; State ex rel. v. Chaney, 49 Mo. App. 511.]

In Black v. Street Railway, 162 Mo. App. 90, 97, 144 S. W. 131, the court held it proper to so amend a petition as to allege general negligence only after the case had been reversed and remanded by the Supreme Court for inability to make out a case based on allegations of specific acts of negligence, such not being a change of the cause of action though requiring much less proof than the original petition. [See also Stone v. Trust Co., 150 Mo. App. 331, 346, 130 S. W. 825; Ely v. Railroad, 141 Mo. App. 708, 719, 125 S. W. 833; Woodson v. Railroad, 224 Mo. 685, 708, 123 S. W. 820; Madden v. Railroad, 50 Mo. App. 666, 682.] The question of permitting a petition to be amended before proceeding to a new trial is different from allowing a petition to be so amended during or after the trial as to present new issues which the defendant was not summoned to meet and, therefore, was not prepared to refute. This distinguishes several of the cases cited and relied on by appellant. The motion to modify the opinion and judgment is therefore overruled. All concur.