Bryant v. Russell.

BRYANT V. RUSSELL, *Appellant.*

Division One, March 12, 1895.

1. **Municipality**: KANSAS CITY CHARTER: GRADING "BENEFITS:" REDEMPTION.  The charter of Kansas City, as amended in 1892, permits the owner to redeem land, sold on execution for "benefits" in grading cases, as well as under special tax bills for the improvement of streets.

2. ———: ———: ———: ———.  Where a party is entitled to redeem land sold under execution, and the right is denied, he may come into the court from which the execution issued, and, by immediate motion, secure recognition of the right.  He is not bound to wait until the return term of the writ.

3. **Practice**: COURT: PROCESS.  A court has power to so control its process as to see that no injustice is done thereby.

4. **Statute**: REPEAL BY IMPLICATION.  A later statute, covering the subject-matter of a former one, will repeal it to the extent that they conflict, whether the later refers to the older act, or not.

5. ———: CONSTRUCTION: LAWMAKERS' INTENTION.  The validity of a statute is its intent, and, where that is plain, it should have effect. What is within the clear implication of an enactment is as much a part of it as its letter.

6. **Practice**: MOTION: COSTS.  Where the party filing a motion asks a larger order than he is entitled to, the court may deny it; or, if it grants the part to which he is entitled, may, in its discretion, tax the costs of the motion against the moving party.

7. ———: ———: ———: HARMLESS ERROR.  An omission to tax costs on a motion is not reversible error, where it can be plainly seen to have been harmless.

8. ——: ——: APPEAL.   An appeal will lie under the laws of 1891, (p. 70) from a ruling on a motion for leave to redeem from an execution sale for benefits under the Kansas City charter, as from other special orders after judgment.

*Appeal from Jackson Circuit Court.*—HON. J. H. SLOVER, Judge.

AFFIRMED.

*Kinley & Kinley* and *Frank J. Eighme* for appellant.

(1) It will not be claimed by respondents that the charter of Kansas City adopted in 1889 authorized any redemption after sale under execution for benefits arising from establishing or changing the grade of ·a street.   Art. 8, Charter Kansas City, section 9, on page 79.   (2) The amendments to the charter of 1889, adopted February 27, 1892, so far as applicable to article 8, amended sections 1 and 2, and section 5, and no more.   Amendment 1892, article 8, on page 13 of the amendment.   In neither of these is the right given to redeem from execution sale similar to case at bar.   It follows, unless such right is explicitly given to the property owner, it can not exist.   (3) The amendment made to article 9 of the charter, permits. such redemption when property is foreclosed under special tax bills for improvements made under control of the board of public works and no more.   Section 18, article 9, amendment 1892, page 24.   (4) The motion to quash should have been overruled, because it was an effort made to secure equitable relief thereby.   *State ex rel. v. Clymer*, 81 Mo. 126.   (5) The motion was made at the wrong term of court; it should have been made at the term to which the execution was returnable.   (6) The judgment and execution being conceded to be regular, and

no lack of jurisdiction being claimed or shown and no complaint being made as to levy or method of conducting sale under special execution, there could not possibly be any reason for quashing the execution or levy in the case. *Horstmeyer v. Connor*, 51 Mo. App. 394; *Bauer v. Miller*, 16 Mo. App. 252; *Ewing v. Donnelly*, 20 Mo. App. 6; *Sappington v. Lentz*, 53 Mo. App. 44.

*F. H. Dexter* and *J. L. Grider* for respondent.

(1) Courts of general jurisdiction have an inherent supervisory power over their process and may quash or set aside an execution whenever it is necessary to prevent or correct abuses thereof, according to the justice and equity of each particular case. 7 Am. and Eng. Encyclopedia of Law, p. 146, sec. 8. (2) A court has power over its own process and can set aside an execution sale on motion certainly at or before the return of the writ. *Company v. Scholer*, 85 Mo. 496; *Ray v. Stobb*, 28 Mo. 35; *Nelson v. Brown*, 23 Mo. 13; *Downing v. Still*, 43 Mo. 321. (3) Process of a court is undoubtedly under its control and the sale can be vacated by the court prior to a final return of the execution. *State ex rel. v. Evans*, 53 Mo. App. 663. (4) That the court had power over its own process and could set aside an execution sale on motion when the writ was in the hands of the sheriff and unreturned, is supported by elementary authorities, as well as by numerous decisions of the supreme court of Missouri. *Company v. Scholer*, 85 Mo. 496; *Ray v. Stobb*, 28 Mo. 35; *Nelson v. Brown*, 23 Mo. 13; *Downing v. Still*, 43 Mo. 321.

BARCLAY, J.—This is a somewhat peculiar proceeding, growing out of a condemnation suit to enforce a city ordinance for the grading of Kansas avenue in Kansas City, Missouri.

In July, 1891, that suit was begun, in the usual way, by the municipal authorities, to ascertain the damages to be caused by grading that avenue, and to assess the benefits to adjacent property within the district prescribed by the ordinance.

There is no question as to proper parties, or of the regularity of the early steps in the suit.

A judgment was reached, April 27, 1892, by which the damages and benefits were determined, as between the parties then before the court.

Afterwards a special execution against the rea-property of Mary R. Bryant was duly issued by the circuit court to enforce the assessment for benefits against said property. The execution was returnable to the April-term, 1893. In January of that year, after the usual notice, the property charged with the benefits was regularly sold to satisfy the execution; but no deed was actually made because of the events which followed.

The appellant, Mr. Russell, was the purchaser at that sale.

Within a few days thereafter, Mary R. Bryant filed a motion to quash the execution and for leave to redeem her land, having tendered to the sheriff the necessary funds for that purpose; and then paid them into court to confirm her offer to redeem.

That motion is the matter now before us for review. The trial court sustained it, and allowed her to redeem the property, upon payment of the full amount (with interest) then due, according to the provisions of the city charter.

The purchaser at the sale, who had been duly notified of the motion, resisted it; and, upon the ruling sustaining it, brought the present appeal, after the usual exceptions and motion to obtain a different result in the trial court.

The appellant insists on a reversal upon the ground that the action of the circuit judge was unwarranted by the charter of Kansas City which he purported to construe.

There are some minor points of alleged error, which will be considered in due course.

1. The defendant in the motion claims that he acquired title to the land by his purchase at the execution sale. The moving party denies this claim, relying on her supposed right to redeem. The existence or nonexistence of this right substantially determines the question of title to the land. Hence the issue involves title, and comes within the jurisdiction of this court, defined by the constitution, as interpreted by former rulings on that subject. Constitution, 1875, art. 6, sec. 12; *Gardner v. Terry* (1890), 99 Mo. 523; *Nearen v. Bakewell* (1890), 40 Mo. App. 625, and (1892), 110 Mo. 645.

2. The leading contention to support the appeal is that no right to redeem, as against a sale on special execution for "benefits" in grading cases, is conferred by the revised charter of 1892 of Kansas City, on the terms of which the trial judge placed his ruling. Counsel for appellant argue that the amendments to the original freeholders' charter, which were made in 1892, do not have the effect which the trial court has ascribed to them in respect of the topic of the present dispute.

The freeholders' charter became the organic law of Kansas City in 1889, pursuant to authority contained in the constitution of 1875 (art. 9, sec. 16).

Under the provisions of the latter, the original charter, once adopted, became subject to amendment in the mode pointed out by the constitution.

It is not now contended that the procedure followed in making the amendments of 1892 was irregular. The contention is that section 9 of article 8 of the original

charter of 1889 was not changed by the amendments. That section authorized a sale of land on special execution to enforce a judgment for benefits. It was wholly silent as to any right of a property owner to redeem after the sale. The eighth article, in which that section (9) appears, deals with the general subjects of grading streets, and the ascertainment and payment of damages therefor. It prescribes the procedure in that class of actions, and contains no hint of any right of redemption.

The amendments of 1892 purported to repeal some sections of article 8 of the charter of 1889, by inserting other sections instead. Section 9 of that article (8) was not expressly altered. Nor did any of the new sections of article 8 refer to a right to redeem against sales for "benefits."

But in the amendments to article 9 appears some new matter which bears on the present controversy. That article originally dealt with general public improvements, streets, sidewalks, sewers and special tax bills. It is very long, as are the amendments. We shall not quote either in full. It will be sufficient to quote some parts of the new matter introduced by the amendments to be construed.

The amendment to section 17 of article 9 prescribes steps to be taken for the public record, collection and payment of special tax bills for street improvements, etc. It requires the city treasurer to keep a "special tax record," and adds:

"Such record shall be complete and full and show all special tax bills, if any, issued under this charter and all benefit assessments arising out of condemnation and grading cases made under the provisions of articles VII and VIII, respectively, of this charter which may be in his hands for collection against any lot or parcel of land in Kansas City. Any and all special

assessments therein contained, whether arising out of the issuance of special tax bills, as in this article provided, or by virtue of the verdict or report of juries or commissioners in said condemnation or grading proceedings, respectively, shall be considered for the purpose of collecting and receiving payment thereof, as special taxes against any lot or parcel of land, against which the same may be a lien, and upon application to the city treasurer for the amount of general city taxes against any lot or parcel of land in Kansas City, said treasurer shall also furnish to the party making such application a list of all special tax bills and such benefit assessments against such lot or parcel of land as appears by said record at that time."

Further along in the same amendment of section 17 of article 9 appears the following:

"The common council may, by ordinance consistent with the provisions of this charter, further regulate the keeping of the records by the city treasurer of special tax bills and benefit assessments against private property arising out of the provisions of articles VII and VIII of this charter, and the collection of such assessments by execution and sales of the private property against which the same may be a lien."

The amendment to section 18, of article 9, provides generally for the collection and enforcement of special tax bills. In directing the mode of proceeding, it declares that, upon rendition of judgment on those tax bills, "a special execution shall issue to sell the land to pay any such judgment, interest and costs."

It further provides that "upon sales made by the sheriff under any such special execution, he shall issue to the purchaser a certificate of purchase, setting forth the substance of such special execution, the date of sale, the purchaser, the property sold, and the amount bid. If the property so sold be redeemed within one

year from the date of such sale by payment to the sheriff of the amount due on said judgment, including interest and costs up to the date of redemption by the owner of or party interested in the said property, no deed shall be given by the sheriff.  Upon such redemption as herein provided of any lot or parcel of land sold under such special execution the judgment against the same and the lien thereon shall be satisfied on the record of such judgment in the office of the clerk of the circuit court aforesaid by said clerk upon presentation of the receipt of the sheriff for the amount necessary for redemption.  If the lot or parcel of land so sold be not redeemed, as herein provided, a deed shall be given at the end of one year from the date of said sale by the sheriff to the holder of said certificate."

One position taken by appellant is that the language above quoted does not confer a right to redeem in respect of sales to enforce judgments for "benefits," but only in regard to special tax bills for the improvement of streets after the latter have been acquired and graded.

We hold, however, that the terms of the amended section 17 of article 9, were intended to apply the charter provisions governing the collection and "receiving payment" of special tax bills to assessments for benefits in grading cases.

The right of redemption is an important feature of the present charter provisions governing the "collecting and receiving payment" of those tax bills, and, as such, it is made applicable to the collection of assessments for benefits such as are under consideration.

It is true that there is no express grant of the right of redemption as to these benefit assessments;

but the implication of it is too clear for any extended discussion.

The vitality of a statute is its intent, and where the latter is plain the court should give it effect. What is within the clear meaning and implication of an enactment is as much a part of it as its very letter.

3.   It is next asserted that as the charter amendments of 1892 do not, by their terms, mention section 9 of article 8 of the freeholders' charter, that that section can not properly be considered qualified or repealed to any extent by the later amendments.

It is true that that section was, nominally, left untouched by the amendments. But if the latter dealt with the same subject, by amending another section, the effect would be the same as though section 9 of the eighth article had been in terms altered.

It is a general rule of construction of laws that a later statute, covering the subject-matter of a former one, will repeal it to the extent that they conflict, whether any reference is made by the later to the older statute or not.

This rule has some qualifications, but none that impair its bearing upon the case in hand.

4.   Next, it is urged that the motion to be allowed to redeem against the sale for "benefits" was premature. The special execution was returnable to the April term, 1893; but the motion was made in January of that year, a few days after the sale.

A court can usually control its own process. It was not bound to wait until the April term before acting on the motion for leave to redeem.

The purchaser at the sale had notice of the motion, came in and opposed it.

The right to redeem might have been exercised at any time "within one year from the date of such

sale by payment to the sheriff," etc, as the quotation already given from section 18 of article 9 indicates.

No motion was, in fact, essential, unless the sheriff declined to receive the payment, or the intervention of the court became, in some way, necessary to give the party the full benefit of the right of redemption afforded by the charter. It was, however, entirely competent for the court to act in the matter on being seasonably invoked to decide whether the right to redeem existed.

The motion actually filed was to quash the special execution and to allow the moving party to redeem. There was no need to quash the execution. The right to redeem existed, irrespective of the standing of the execution. The trial court might have declined to sustain the motion because it asked specifically for too large an order. But the action of the court in granting it, and thereby quashing the execution (so far as it related to the Bryant property) was not prejudicial to any substantial right of the purchaser, if the owner of the property had the right to redeem, as the trial court held she had, and as we now hold. The circuit court required the moving party to pay her proper proportionate share of the costs of the original proceeding, as well as the "benefits," with interest, and made no order as to the costs of the motion to redeem. We shall correct that oversight here, in such a way as to avoid any possible detriment to the appellant.

But no prejudice to the purchaser could have resulted from that part of the court's ruling, in the circumstances. It was a harmless error, at worst, and can furnish no substantial basis for a reversal. R. S. 1889, secs. 2100, 2303.

In permitting the exercise of the right to redeem, the trial court was clearly right, and its action should be sustained. That was the vital part of its ruling. Some motion was needful in the case to secure a recogni-

tion of the right to redeem; for the facts recited in the motion before us are that the mover had tendered to the sheriff a sufficient sum to redeem the land, before filing the motion; but that that officer had refused to accept it, and thus had denied all right to redeem. Those facts were established at the hearing of the motion, and are admitted in the record in this court.

We think that a fair and reasonable construction of the charter provisions already quoted permits the redemption of land (sold to satisfy such charges) as a part of the original proceeding. This is evidently contemplated by those provisions. They provide that the lien thereof shall be satisfied of record "upon presentation of the receipt of the sheriff for the amount necessary for redemption."

If the officer declines to accept a sufficient tender, it certainly is proper to go into a court, having control of the process, to obtain an order suspending the further execution of the process upon so showing. That should have been the order in this case, but the variation from it is neither material nor substantial, on the facts disclosed.

5.   In this connection it is insisted that the motion should have been overruled because it was an effort to obtain equitable relief in a statutory, or law, action.

Under our system of jurisprudence, the circuit court, in a statutory proceeding such as this, has jurisdiction, upon motion, to regulate or control the use of its own writs, so as to see that no injustice is done thereby, and that effect be given to a right of redemption, conferred by positive law, as to sales under its judgments.

The court need not, in such a case, send the moving parties away to begin a new suit in the form of a bill in chancery; but, by exerting its power over its own

remedial process, may require that the latter be employed only as an instrument of right.

Whether the jurisdiction to so act upon motion is properly classified as legal (*Gillespie v. Rout* (1866) 39 Ill. 247) or equitable, we do not pause to consider. It springs from the court's power to control its own action, in pending proceedings, so as to subserve the ends of justice. We think the use of that power in the present instance was proper, and called for by the facts shown.

6. There need be no question of the right to appeal from the action of the circuit court on the motion. The statute of 1891 (Laws, 1891, p. 70) gives a right to appeal "from any special order after final judgment in the cause." This is broad enough language to confer the right, if it did not already exist. Whether it did or not is but a moot question now.

7. We have considered all the objections urged to the action of the trial court upon the motion; and finding none of them substantial, we affirm the judgment, at the same time adjudging that the costs of the motion in the circuit court (including the order of the court upon it) be taxed against the moving party; but, from that point of the litigation, beginning with appellant's motion on the circuit to set aside the court's order permitting Mary R. Bryant to redeem, the costs are to be taxed against appellant. (R. S. 1889, secs. 2921, 2304). BRACE, C. J., and MACFARLANE and ROBINSON, JJ., concur.