SPELLMAN LAND & SECURITIES COMPANY v. STANDARD INVESTMENT COMPANY and KANSAS CITY, Appellants.

Division Two, March 18, 1922.

1. **KANSAS CITY CHARTER:** Condemnation Benefit Assessments: Redemption of Lands Sold for. Lands, sold under special execution issued on a judgment assessing benefits in a condemnation proceeding under Article 6 of the Kansas City Charter 1908, may be redeemed within one year from such sale, in accordance with the

provisions of Article 8 of such charter. applicable to redemption from sales under special execution on judgments enforcing special tax bills issued for public improvements.

2. ———: **Tax Sales: Redemption: What Must be Paid.** One seeking to redeem lands sold for general city taxes under Article 5 of the Kansas City Charter 1908, is not required to pay special tax bills for grading, paid by the purchaser at the tax sale, where the lien of such tax bills had expired, as provided in said charter, at the time th⌐⌐ were paid by such purchaser.

3. ———: ———: ———: ———: **Equitable Considerations.** Inasmuch as the legal remedy for the enforcement of the lien of special tax bills issued for public improvements under the Kansas City Charter 1908 is adequate and complete, the purchaser of lands sold for general city taxes under said charter is not entitled to insist, upon equitable grounds, that one seeking to redeem such lands from such tax sale should pay special grading tax bills which such purchaser had paid after the lien thereof had expired.

4. ———: ———: ———: **Who Entitled to Redeem: Unstamped Deed.** A deed to land, which, through inadvertence, was not stamped at the time of its execution, as required by the Federal Revenue Act of 1917, and which, upon objection made, the trial court permitted to be stamped, was admissible in evidence for the purpose of showing that the plaintiff had paid the purchase price of the property and had thereby acquired the equitable title thereto and as such was "the owner" and entitled, under Section 34, Article 5, Kansas City Charter 1908, to redeem such land from a sale thereof for general city taxes.

Appeal from Jackson Circuit Court.—*Hon. Allen C. Southern,* Judge.

AFFIRMED.

*Hunter M. Meriwether* and *Ball & Ryland* for appellant.

(1) Exhibit 2 (the deed under which plaintiff claims title) was required under Federal law to be duly stamped before it could be admitted to record or in evidence; and being incompetent by reason of that omission, at the time the suit was filed and at the time the trial was begun, it could not be validated or rendered competent by stamp-

ing it during the progress of the trial. Sec. 13, Act June 13, 1898; 30 S. L. 454, as amended by Sec. 7, Mch. 2, 1901; 31 S. L. 940, and Act Oct. 3, 1917; Fed. Stat. Ann. 1918, Supp. 368. (2) In any event plaintiff must have been owner in fee of the property at the time the suit was filed and up to the date and time of the decree. (3) The charter of Kansas City 1909 was a law of equal force with an act of the Legislature, and of superior effect where it pertained solely to municipal matters. (4) That charter law put special assessments in the same category as general taxes, in respect of the requirements for redemption of property from tax sale, defining the duties of owner and officers, in language which can neither be misunderstood nor judicially amended, requiring, as a condition of redemption, the owner to pay and the officer to exact payment of all taxes or assessments which had in due course been paid and entered on the certificate of sale. Secs. 33, 34, Art. 5, Charter 1909, p. 237; Hill v. St. Louis, 159 Mo. 159. (5) The charter law concerning "Condemning and Damaging Private Property" controls and is clear and unambiguous. It specifically applies to the execution under which the sheriff sold the lots and Standard Investment Company bought them and paid for them. It was not a redeemable sale, but the purchaser was and still is entitled to an immediate sheriff's deed. Charter 1909, art, 6, pp. 250, 290. (6) This suit cannot be maintained by reason of the statute law of this State. Laws 1903, p. 254; R. S. 1909, secs. 11508, 11509, 12956, 12957; State ex rel. v. Tumbrook, 240 Mo. 238; State ex rel. v. Wilson, 216 Mo. 286; Haarstick v. Gabriel, 200 Mo. 245. (7) Both in civil and criminal cases, the rule of law is established that laws specially enacted for a particular subject control and prevail over general laws. Therefore, the special charter provisions and the special act of the Legislature pertaining to the particular subject here are the laws which govern.

*Gage, Ladd & Small, Clarence I. Spellman* and *Caleb S. Monroe* for respondent.

(1)   It is only taxes subsequently paid by the pur-chaser, or his assigns, that the owner must repay in order to redeem his property from the tax sale.   Kansas City Charter, sec. 34, art. 5.   (2)   The special grading tax bills were not a debt.   They were but a lien upon the lots created *in invitum,* and a method for enforcing that lien having been provided, it was exclusive.   Kansas City v. Field, 226 S. W. 33.   (3)   The lien of the grading tax bills having expired before the payment to the city treas-urer, the defendant is entitled to redeem the property from the tax sale without paying the amount of the tax bills.   Burke v. Brown, 148 Mo. 309; Pitkin v. Reibel, 104 Mo. 505.   (4)   The plaintiff was entitled to redeem the property from the sale by the sheriff under the special execution at any time within one year from the date of the sale.   Having so redeemed it, no deed can be given by the sheriff.   Secs. 22, 23, 24, Art. 8, Kansas City Charter 1909, pp. 335, 336, 337, 340;  Bryant v. Russell, 127 Mo. 423;  Bradley v. Judd, 127 Mo. 434;  Davis v. Evans, 174 Mo. 307.   (5)   The re-adopting of the lan-guage of the Kansas City Charter of 1889, relating to sales under judgments on taxbills, grading benefits and condemnation benefits, was an adoption of the judicial construction theretofore given to that language.   Endlich on Inter. Stat. sec. 368;  Davis v. Evans, 174 Mo. 316; State v. Scheink, 238 Mo. 455.   (6)   Plaintiff's deed was a valid deed and properly admitted in evidence.   Cole v. Ralph, 40 Sup. Ct. Rep. 325;  Campbell v. Wilcox, 10 Wall. 421.   (7)   It was proper to permit the deed to be stamped during the progress of the trial.   Farmers Bank v. Johnson, 91 N. W. 1076;  Harvey v. Wieland, 88 N. W. 1077.

WHITE, C.—The plaintiff brought this suit to de-termine title to certain lands in Kansas City, and to re-deem said lands from a sale for city taxes.

The defendant claimed to be absolute owner, and that the plaintiff had no right to redeem; that if plain-tiff had a right to redeem it should be required to pay

certain special tax bills which the defendant had acquired against said property.

One William A. Evans had owned the lots. On July 9, 1914, Evans conveyed them to the Utility Investment Company, and the Utility Investment Company, May 31, 1918, conveyed the same to the plaintiff. This was the plaintiff's title.

The defendants' claims against the lots were as follows:

In July, 1915, while the lots were owned by the Utility Investment Company, special tax bills for grading Charlotte Street adjacent to said property were immediately transferred by their owner to the defendant Standard Investment Company. These grading tax bills amounted in July, 1917, to $1877.74.

The property had been sold for general taxes for the year 1916, bid in by the city, and certificates of purchase had been issued to the city. On July 13, 1917, defendant paid to the city treasurer the general taxes mentioned, with penalties and costs, which amounted to $93.06, and took an assignment of the certificate of purchase.

In a condemnation proceeding in the Circuit Court of Jackson County judgment had been rendered, assessing benefits against the lots, of which benefit assessment it appears defendant became the owner by assignment in July, 1917. Special execution was issued upon the judgment and the lots sold October 20, 1917, to the defendant, Standard Investment Company, at the price of $287.77, which it paid to the sheriff. The sheriff did not deliver a deed to the defendant, but delivered certificates of purchase reciting that the lots might be redeemed within a year from the date of sale. In July, 1918, within the year, the plaintiff—respondent here—paid to the sheriff the amount received by him from the defendant, and the sheriff issued to the plaintiff certificates of redemption. Afterwards, in August, 1918, the sheriff paid to the defendant the total amount which it claimed as holder of the certificates of purchase just

mentioned.    The defendant accepted and retained this money.

In the meantime the defendant, as holder of special tax bills for grading Charlotte Street mentioned above, brought suit July 6, 1917, six days before the lien provided by the charter should expire, to enforce its lien of those special taxes against the lots. This suit, however, was brought against William A. Evans, the former owner, after he had conveyed the lots to the Utility Investment Company, which was the record owner at the time the suit was brought and since July, 1914.    Eleven days later, July 17, 1917, the Standard Investment Company, after it had paid the general taxes mentioned above, dismissed its suit against Evans.    Thus the Standard Investment Company, on July 17, owned the certificates of purchase for general taxes and the special tax bills for grading, the lien of which had expired some five days before, and which amounted to $1877.74.

On that day the Standard Investment Company paid to the city treasurer that amount in settlement of the tax bills owned by itself, and two days later, as owner of the tax bills, received from the city auditor the same amount. That is, the defendant, claiming to own the land, paid to the city $1877.74, the amount of the tax bills, and, as owner of the tax bills, received from the city immediately the same amount.

When this suit was brought, October 17, 1918, the plaintiff held the record title as stated, which it had acquired through mesne conveyances from William A. Evans, and it also held certificates of redemption which had been issued when it paid the amount of the judgment for benefits assessed in the condemnation proceeding. At that time the defendant held the certificates of purchase aggregating $93.06, which it acquired under sale for general taxes in July, 1917, and also held the tax bills for grading, aggregating at that time more than two thousand dollars, including interest.    On July 15, 1918, before bringing the suit, the plaintiff tendered to the city treasurer $93.06 for general taxes for the purpose

of redeeming the land. This was refused because the plaintiff did not also tender the amount of the special tax bills for grading, the lien of which had expired July 12, 1917.

After hearing this evidence the circuit court recited the facts and decreed that the plaintiff was owner in fee of the lots described in the petition and that the same were chargeable with only $93.06 the amount of the general taxes and penalties for the year 1916, which amount had been tendered by the plaintiff and deposited with the clerk of the court. Whereupon the defendant appealed.

I.  The appellant asserts that the plaintiff had no right to redeem the land from a sale under the execution; that while the charter of Kansas City expressly permits redemption from sale under execution **Benefit Assessment:** to enforce a judgment upon special tax **Redemption of** **Lands Sold.** bills, it does not allow redemption from a sale under execution issued upon a benefit assessment judgment.

Article 8 of the Charter of Kansas City covers the general subject of public improvements. It provides for assessments, tax bills, etc., for improvements. Section 23 of the Article requires the treasurer of the city to keep a "special tax record" which should be "complete and full and show all special tax bills, if any, issued under this charter and all benefit assessments arising out of condemnation and grading cases," etc. . . . "Any and all special assessments therein contained whether arising out of the issuance of special tax bills as in this article provided, or by virtue of the verdict or report of juries or commissioners in such condemnation or grading proceedings, respectively, shall be considered for the purpose of collecting and receiving payment thereof, as special taxes against any lot or parcel of land against which the same may be a lien."

Section 24 of the same Article provides that "every special tax bill issued under the provisions of this article shall be a lien upon the land described therein upon

the date of the certification thereof to the city treasurer, as in this article provided, and such lien shall continue for two years thereafter, but no longer," etc.

Continuing, Section 24 provides for the issuance of special tax bills, for suit to enforce same and for judgment thereon, and contains this provision: "Upon sale made by the sheriff upon any such special execution he shall issue to the purchaser a certificate of purchase setting forth the circumstances of such special execution, the date of sale, the purchase, the property sold and the amount bid. If the property so sold be redeemed within one year from the date of such sale by the payment of the amount of such judgment, including interest and costs up to the date of redemption by the owner of or party interested in said property, no deed shall be given by the sheriff. Upon such redemption as herein provided of any tract of land sold under special execution the judgment against the same and the lien thereof shall be satisfied on the record of such judgment," etc.

The appellant points out that "*every special tax bill*" as provided in that article, shall be a lien upon the land, and asserts that the provisions for executions upon them applies only to special tax bills and not to benefit assessments in condemnation proceedings, and that the provision quoted refers only to executions issued upon the judgment to enforce special tax bills and does not include special executions upon judgments for a benefit assessment.

It will be noticed that Section 23 provides for a special tax record, which is to include special tax bills as well as benefit assessments, and both are to be considered for the purpose of collection as special taxes.

In Bryant v. Russell, 127 Mo. 422, this court quoted from the then charter of Kansas City a provision exactly the same in respect to the above as the present charter, and held that the right of redemption applied to sales under judgment for benefit assessments as well as under judgment for special tax bills, and that such was the intent of the Legislature in framing the Kansas City char-

ter.    The court uses this language, l. c. 430:    "The vitality of the statute is its intent, and where the latter is plain the court should give it effect.    What is within the clear meaning and implication of an enactment is as much a part of it as its very letter."

That language has been quoted and the principle approved in the later case of State ex rel. v. Trustees of William Jewell College, 234 Mo. 299, l. c. 313.    The omission to mention execution on benefit assessments as well as tax bills, does not prevent that conclusion as to the intent, because such benefit assesments are provided for in the same special record and are to be treated as special taxes.

Appellant further contends that the provisions of Article 6 of the Charter of 1908, relating to the condemnation of property for public purposes will control the provisions of Article 8, which is a general act, and points out some of the provisions of Article 6 in relation to the condemnation.    Among other things that article provides that after a verdict fixing the assessment in condemnation proceedings, and judgment, on a sale the sheriff shall make the purchaser a deed and vest in the purchaser all the right, title, interest and estate of the parties owning and interested in the land sold.    Then it provides that "executions and proceedings thereon shall be under the control of the court as in ordinary civil cases."

There are other provisions in Article VI relating to proceedings for condemnation, a trial, verdict of the jury, method of conducting trial, appeals, etc.    However, all these provisions relate to the method of procedure in the conduct of a condemnation proceeding until the final judgment and execution.    There is nothing in any of them to show an intention to deprive a landowner of any of the benefits and privileges provided by the general article on public improvements, Article 8.    The article relating to the special subject contains no provision that is in conflict with the provisions of the general article.

II.   The appellant claims that if the plaintiff has a right to redeem it is only by payment of the special tax bills which the defendant held for grading.   It will be recalled that those special tax bills which the defendant held were issued July 12, 1915, and certified to the city treasurer on that day.   Section 24 of Article 8 of the Charter of Kansas City provides that every tax bill issued under the provision of the article relating to public improvements shall be a lien upon the land described therein from the date of the certification to the city treasurer, and shall continue for two years thereafter.   Then the lien of such tax bills expired July 12, 1917. The defendant acquired them before the lien expired and brought suit on them July 6, 1917, against the wrong party, which suit was afterwards dismissed.  The appellant claims the right to include those in the amount which plaintiff should be compelled to pay in order to redeem, as provided by the city charter, and quotes Section 34, Article 5, of the city charter relating to the subject, as follows:

**Redemption: Expired Tax Bills.**

"Section 34.   Real property sold under the provisions of this article, including any real property bid off by the city, or any interest in such real property, *may be redeemed by the owner, or his agent or attorney, at any time within five years from the first day of which the annual tax sale began* . . . by the payment to the city treasurer of the amount for which such real property was sold, together with interest thereon at the rate per cent bid per annum from the date of purchase together with any other taxes, assessments, or benefits *subsequently paid* by the purchaser, his heirs or assigns, as authorized by this charter, whether state, county, park, municipal, general or special, together with interest thereon at the same rate from date of payment."

It will be noticed that this section provides that a purchaser at any tax sale, as provided in Article 5, in order to redeem, must pay any other taxes, assessment or benefits *"subsequently paid"* by the purchaser.   If these special tax bills, while still alive, had been taken

up by the defendant after it had acquired the general tax certificate of purchase, then the right to redeem them would come technically within the provisions of that section although the lien may have expired prior to the time of redemption. However, the purchase by the defendant under the general tax sale was on July 13, 1917, and it had acquired grading tax bills immediately after their date, July 12, 1915. Thus the claim of title by the defendant was acquired not only *after* it had acquired the special tax bills, but after the lien of those tax bills had expired.

Evidently the appellant purchased the certificate of redemption and also the benefit assessment judgment, not as independent investments, but for the very purpose of protecting its tax bills upon which the lien had expired. The appellant, then, in order to come within the technical requirement of the section quoted, paid in to the city treasury $1877.74, the amount of the special tax bills which it held. It occupied the dual position of purchaser at the tax sale and holder of the special tax bills; as purchaser it paid in to the city treasury the city tax bills, and as holder of the tax bills it two days later collected the same money from the city auditor. Even if this transaction could be called a payment of the tax bills it was made after the lien on the same had expired and neither the purchaser nor the owner was under obligation to pay them in order to protect the property. Appellant, however, calls attention to the language of Section 34, Article 5, quoted, which requires the purchaser, in order to redeem, to pay "*any other taxes, assessments, or benefits subsequently paid*" and argues that this provision of the charter is not limited to such taxes, assessments and benefits as *are a lien* upon the land, but applies to all assessments of benefit whether a lien or not. In thus invoking a technical and literal construction of this section appellant assumes that the payment to itself of the amount of special tax bills was a payment *subsequent* to its purchase. Aside from that, appellant asserts that inasmuch as the property has been benefited by the im-

provement, as a matter of right plaintiff ought not to redeem without paying for such improvements. Appellant does not use the expression "for equity and in good conscience," but that is the purport of the argument.

It is true, Section 34 does not say anything about taxes and assessments which are *a lien* against the property. But several sections follow relating to "redemption," and it is plain that the term means redemption from some *charge* against the land. There could be no such thing as redemption from some invalid claim or some non-existent charge. It will be noticed that Section 39, Article 5, provides that in case the property is not redeemed within the time provided, a deed shall be delivered by the city treasurer to the purchaser "free from all incumbrances of any kind or nature, subject, however, to all unpaid state, county and city taxes, general and special taxes, or assessments *which are a lien thereon.*" The purchaser at a tax sale, then, is free from any obligation to pay special taxes which are not a lien. The land which he purchases could not in any event be subject to a lien which had expired, and being under no obligation to discharge a lien which had expired, how can it be said that he could require the owner, in redeeming, to pay back to him what he paid as a mere gratuity? A technical construction of the charter which appellant invokes would thus relieve the owner, in redeeming, from having to pay the purchaser what the purchaser was under no obligation to pay.

It is admitted by appellant that one who voluntarily pays taxes for another is without remedy against the property, but the appellant argues that the city charter provides certain conditions upon which redemption may be had, and invokes Section 34 as providing those conditions. In framing Article 5 of the Charter of Kansas City it was not the legislative intent to give the purchaser at a tax sale a privilege and advantage which the owner of the land purchased did not possess. The purchaser at a tax sale may ignore tax bills which have ceased

to become a lien.  They do not affect his right or title in
the least;  then why, under all the sections relating to
redemption, should the owner be under obligation to meet
claims of which the purchaser is relieved?  The case of
Burke v. Brown, 148 Mo. 309, is in point upon this prop-
osition.  The court there held that taxes unlawfully as-
sessed against property could not be demanded by the
purchaser at a tax sale as a condition upon which the
owner could redeem.  It is true in that case the taxes were
never lawful, and appellant distinguishes them from as-
sessment in this case, because originally they were law-
ful for benefits accruing to the land, but the lien had ex-
pired.  It looks as if the broad rule laid down there should
apply, as the court uses this expression, l. c. 317:  ''If
the circumstances were such that the owner never was
under obligation to pay the sum charged to him, so that
no enforcible lien attached in favor of the State, it seems
too plain for argument that no statute can place the pur-
chaser in the position of holding a valid lien on the land.''

At the time the appellant claims to have paid those
tax bills to the city treasurer there was no enforcible
lien in favor of the city nor in favor of the holder of the
tax bills.  The fact that there had been a lien which had
expired would not affect the situation.

The appellant, while not using the words ''in equity
and good conscience'' in effect argues that the plaintiff
cannot escape the charge for the special tax bills.  This
court held in the case of Kansas City v. Field, 226 S. W.
27, that equity would not enforce the lien of a tax bill.
The court said at page 32:  ''The courts are practically
unanimous in holding that, if a statutory method of col-
lection is provided, especially if it is adequate and com-
plete, equity is without jurisdiction.''

Also at page 33:  ''While at first thought it may ap-
pear right for chancery to enforce tax liens, the notion
vanishes when we remember that the subject is not within
the original cognizance of equity, but pertains to the
political branch of the government, and therefore, ac-
cording to all analogies, cannot fall within the equity

jurisdiction, at least unless the tax is made a lien and no sufficient remedy is provided to make the lien efficacious.''

Now, it cannot be contended here that ample provision for the enforcement of the tax lien is not provided. The legal remedy is adequate and complete. Naturally a two-year statute of limitations requires diligence in pursuing the remedy. It is salutary, because it is important that such claims be settled and titles cleared. If the defendant failed to avail itself of the legal remedy equity cannot help him. Appellant does not ask affirmative relief, and doubtless would disclaim any intention to invoke the aid of the equity branch of the court in seeking the relief demanded; yet, unless it be in equity, it is impossible to say on what theory the appellant asks the court to enforce his claim on the special tax bills. If the charter fails it there is no other recourse. The charter specifically provides that the lien should expire in two years. The tax bills were not paid ''*subsequent*'' to the defendant's purchase and therefore do not come within the terms of the statute; the liens had expired and were not enforcible and from the plain intendment of Section 34, Article 5, relating to redemption, there is no requirement that the owner in redeeming should pay anything except what was a legal charge against the land.

III. When the plaintiff offered in evidence its deed from the Utilities Investment Company dated May 31, 1918, the defendant objected to it because it was not stamped as required by the Federal Statute, Act of 1917.

Unstamped Deed.

The plaintiff thereupon offered evidence to show that the failure to affix the revenue stamp to the deed was inadvertent, and the court allowed the plaintiff to affix the stamp, and overruled the defendant's objection.

The Federal Statute of 1917, cited by appellant, declares that an unstamped document shall be deemed invalid, but it does not say that it shall not be admissible in evidence. If it be conceded that the deed without a stamp had no effect to convey the legal title to the plain-

tiff, yet it was admissible in evidence for the purpose of showing that the plaintiff had paid the purchase price for the property—a fact which was shown by other evidence. Section 34, Article 5, of the Charter does not say it must be the holder of the *legal title* who may redeem, but *"the owner* or his agent or attorney." It cannot for a moment be complained that anyone else was the owner; the holder of an equitable title is the owner in the general acceptation of the term, and the plaintiff was such owner.

Besides, plaintiff had a certificate of redemption from the benefit assessment, in accordance with the charter. To hold that his deed did not convey the legal title would not affect the plaintiff's right to redeem.

The judgment is affirmed. *Railey* and *Reeves, CC.,* concur.

PER CURIAM:—The foregoing opinion by WHITE, C., is adopted as the opinion of the court. All of the judges concur.